**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

CAPITOL RECORDS, INC., a Delaware corporation, )

                          Plaintiff, )

        - v - )

CITY HALL RECORDS, INC., a California corporation and )
ROBIN COHN, )

                       Defendants. )

------------------------------------------------------------------- X

CITY HALL RECORDS, INC., a California corporation and )
ROBIN COHN, )

                Third-Party Plaintiffs, )

        - v - )

AVID LTD., BODY & SOUL, COMET RECORDS, )
HASMICK PROMOTIONS LTD., PROPER MUSIC )
DISTRIBUTION LTD., SUBMARINE RECORDS, ACE )
RECORDS LTD., ACROBAT MUSIC GROUP LTD., )
CROSSCUT RECORDS, CANDID PRODUCTIONS LTD., )
JAZZOLOGY RECORDS, FREMEAUX AND ASSOCIES, )
TROJAN RECORDS LTD., CDA RECORDS INC., )
DYNAFLOW RECORDS, TUFF CITY RECORDS, )
SANCTUARY RECORDS, and UK DELUXE. )

                Third-Party Defendants. )

------------------------------------------------------------------- X

ECF Case
07-cv-6488 (LTS) (KNF)

**THIRD-PARTY**
**COMPLAINT**

    Defendants/third-party plaintiffs CITY HALL RECORDS, INC. ("City Hall") and ROBIN

COHN (collectively, "defendants/third-party plaintiffs") by their attorneys, LEWIS BRISBOIS

BISGAARD & SMITH LLP, complaining of the third-party defendants AVID LTD., BODY &

SOUL, COMET RECORDS, HASMICK PROMOTIONS LTD., PROPER MUSIC

DISTRIBUTION LTD., and SUBMARINE RECORDS, ACE RECORDS LTD., ACROBAT

MUSIC GROUP LTD., CROSSCUT RECORDS, CANDID PRODUCTIONS LTD., JAZZOLOGY

RECORDS, FREMEAUX AND ASSOCIES, TROJAN RECORDS LTD., CDA RECORDS INC., DYNAFLOW RECORDS, TUFF CITY RECORDS, SANCTUARY RECORDS, and UK DELUXE allege as follows:

## PARTIES

1.     Third-party plaintiff City Hall is a California corporation with a place of business at 101 Glacier Point, Suite C, San Rafael, CA 94901.

2.     Third-party plaintiff Robin Cohn is the owner and principle of City Hall located at 101 Glacier Point, Suite C, San Rafael, CA 94901.

3.     Upon information and belief, third-party defendant Avid Ltd. is a privately held corporation with its principal place of business in Watford, Hertfordshire, England. On information and belief, Avid sells certain recordings at issue in this litigation in the United States through various channels including its website at www.avidgroup.co.uk.

4.     Upon information and belief, third-party defendant Body & Soul is a business entity of unknown form with a principal place of business in Paris, France. On information and belief, Body & Soul sells certain recordings at issue in this litigation in the United States through various channels.

5.     Upon information and belief, third-party defendant Comet Records is a business entity of unknown form with a principal place of business in La Spezia, Italy. On information and belief, Comet sells certain recordings at issue in this litigation in the United States through various channels including its website at www.cometrecords.com.

6.     Upon information and belief, third-party defendant Hasmick Promotions Ltd. is a privately held corporation with its principal place of business in London, England. On information

and belief, Hasmick sells certain recordings at issue in this litigation in the United States through various channels.

7.     Upon information and belief, third-party defendant Proper Music Distribution is a business entity of unknown form with a principal place of business in London, England.  On information and belief, Proper sells certain recordings at issue in this litigation in the United States through various channels including its website at www.properdistribution.com.

8.     Upon information and belief, third-party defendant Submarine Records is a business entity of unknown form with a principal place of business in Middlesex, England.  On information and belief, Submarine Records sells certain recordings at issue in this litigation in the United States through various channels.

9.     Upon information and belief, third-party defendant ACE Records Ltd. is a privately held corporation with its principal place of business in London, England.  On information and belief, ACE sells certain recordings at issue in this litigation in the United States through various channels.

10.     Upon information and belief, third-party defendant Acrobat Music Group Ltd. is a privately held corporation with its principal place of business in Middlesex, England.   On information and belief, Acrobat sells certain recordings at issue in this litigation in the United States through various channels including its website www.acrobatmusic.net.

11.     Upon information and belief, third-party defendant Crosscut Records is a business entity of unknown form with a principal place of business in Bremen, Germany. On information and belief, Crosscut Records sells certain recordings at issue in this litigation in the United States through various channels.

12.     Upon information and belief, third-party defendant Candid Productions Ltd. is a privately held corporation with its principal place of business in London, England.  On information

and belief, Candid sells certain recordings at issue in this litigation in the United States through various channels.

13.    Upon information and belief, third-party defendant Jazzology Records is a business entity of unknown form with a principal place of business in New Orleans, Louisiana.  On information and belief, Jazzology sells certain recordings at issue in this litigation in the United States through various channels.

14.    Upon information and belief, third-party defendant Fremeaux and Associes is a business entity of unknown form with a principal place of business in Vincennes, France.  On information and belief, Fremeaux sells certain recordings at issue in this litigation in the United States through various channels.

15.    Upon information and belief, third-party defendant Trojan Records Ltd. is a privately held corporation with its principal place of business in London, England.  On information and belief, Trojan sells certain recordings at issue in this litigation in the United States through various channels including its website at http://trojanrecords.com.

16.    Upon information and belief, third-party defendant CDA Records, Inc. is a London, England corporation.  On information and belief, CDA sells certain recordings at issue in this litigation in the United States through various channels.

17.    Upon information and belief, third-party defendant Dynaflow Records is a business entity of unknown form with a principal place of business in Pasadena, California.  On information and belief, Dynaflow sells certain recordings at issue in this litigation in the United States through various channels.

18.    Upon information and belief, third-party defendant Tuff City Records, is a business entity of unknown form with a principal place of business in New York, New York.  On information

and belief, Tuff City sells certain recordings at issue in this litigation in the United States through various channels.

19.    Upon information and belief, third-party defendant Sanctuary Records, is a business entity of unknown form with a principal place of business in London, England. On information and belief, Tuff City sells certain recordings at issue in this litigation in the United States through various channels.

20.    Upon information and belief, third-party defendant UK Deluxe, is a business entity of unknown form with a principal place of business in London, England. On information and belief, UK Deluxe sells certain recordings at issue in this litigation in the United States through various channels.

## JURISDICTION AND VENUE

21.    Pursuant to 28 U.S.C. § 1367, jurisdiction of this Court over the subject matter of this third-party action and venue are supplemental to the jurisdiction and venue of the Court over the claims alleged in plaintiff's Second Amended Complaint.

22.    This Court has personal jurisdiction over third-party defendants pursuant to NY CPLR § 302, because Defendants have transacted business within the state of New York, contracted to supply goods or services in the state of New York, and/or committed tortious acts without the state of New York causing injury to person or property within the state of New York.

23.    On or about February 7, 2008, plaintiff Capitol Records, Inc. ("Capitol" or "Plaintiff") filed an Amended Complaint against defendants/third-party plaintiffs, a copy of which is attached hereto as Exhibit A (the "Amended Complaint").

## FACTS

24.     Plaintiff alleges that defendants/third-party plaintiffs regularly advertise, offer for sale, promote, exploit and otherwise distribute, for commercial advantage and private financial gain, within the state of New York and elsewhere, sound recordings that infringe upon common law copyrights owned by or licensed to Plaintiff.  Allegedly, defendants/third-party plaintiffs have also used Capitol's federally registered trademarks in promoting the sale of the infringing sound recordings without any rights, licenses or authorization thereto of any sort.   Allegedly, defendants/third-party plaintiffs are infringing on the trademarks with knowledge of the likelihood of confusion and dilution to Plaintiff's trademarks, and with knowledge that such confusion and dilution would cause harm to Capitol.

25.     Allegedly, the aforementioned infringing activity resulted in unfair competition and unjust enrichment.

26.     Capitol further alleges that the infringing sound recordings are manufactured by companies that have no legal right to manufacture or distribute the recordings within the United States.

27.     Third-Party Defendants are manufacturers and/or current and former suppliers to defendants/third-party plaintiffs of the allegedly infringing sound recordings that, upon information and belief, entered into or assumed oral and/or written contracts including indemnification provisions requiring Third-Party Defendants to indemnify defendants/third-party plaintiffs and to hold them harmless.  Third-Party Defendants' representatives reached out to defendants/third-party plaintiffs and met with them within the United States for the purposes of distributing the allegedly infringing materials within the United States.

28.    Upon information and belief, to the extent there was any infringement, third party defendants caused, or materially contributed to the sale of infringing sound recordings and use of infringing trademarks by defendants/third party plaintiffs, and the unfair competition, consumer confusion, trademark dilution, and unjust enrichment that resulted as a consequence. To the extent that there was any infringing activity, the third-party defendants acted with knowledge of the infringing activity.

## COUNT I
## INDEMNIFICATION

29.    Defendants/third-party plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "28" of this Third Party Complaint.

30.    If, as alleged by Plaintiff, defendants/third party plaintiffs infringed Plaintiff's common law copyrights and trademarks, and unfairly competed with plaintiff in violation of New York law, causing Plaintiff to sustain damages as alleged in the Amended Complaint, then said damages were sustained by reason of the wrongful acts of third-party defendants in having caused the manufacturing and/or distribution and sale of goods infringing plaintiff's copyrights and purported trademark.

## COUNT II
## CONTRIBUTION

31.    Defendants/third-party plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "30" of this Third Party Complaint.

32.    If, or to the extent that defendants/third party plaintiffs are liable to Plaintiff for any of Plaintiff's losses suffered as a result of the alleged infringements and unfair competition, then, pursuant to N.Y. Civil Practice Law and Rules § 1401, third-party defendants will be, or may be, liable to contribute to defendants/third party plaintiffs an amount equal to their equitable share

apportioned according to fault of any recovery granted to Plaintiff as a result of their culpable conduct.

**WHEREFORE**, the defendants/third-party plaintiffs demand judgment against the third-party defendants for indemnity for the full amount of any recovery by Plaintiff CAPITOL RECORDS, INC. against the third-party plaintiffs and/or apportionment of liability and contribution for any recovery Plaintiff obtains against defendants/third-party plaintiffs together with costs and disbursements of this action.

## JURY DEMAND

Defendants demand a trial by jury of all causes of action as to which the law entitles them to a trial by jury.


Dated: New York, New York
        March 24, 2008

                            Respectfully submitted,


                            _____
                            Jura C. Zibas (JZ 8970)
                            Joanne J. Romero (JR 0275)
                            **LEWIS BRISBOIS BISGAARD & SMITH LLP**
                            199 Water Street, 25th Floor
                            New York, New York 10038
                            Tel.: (212) 232-1300
                            Fax.: (212) 232-1399

                            *Attorneys for City Hall Records, Inc. and Robin Cohn*

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

CAPITOL RECORDS, INC., a Delaware corporation, :

                               Plaintiff,     :

- v -

CITY HALL RECORDS, INC., a California corporation :
and ROBIN COHN, individually, :

                           Defendants.   :

-------------------------------------------------------------- X

       ECF Case
       07-cv-6488

       **AMENDED COMPLAINT**

Plaintiff Capitol Records, Inc. ("Capitol"), as and for its complaint (the "Complaint") against Defendants City Hall Records, Inc. ("City Hall") and Robin Cohn ("Cohn"), alleges as follows:

## PARTIES

1. Plaintiff Capitol is a Delaware corporation with its principal place of business at 150 Fifth Avenue, New York, New York, 10011.

2. Upon information and belief, Defendant City Hall is a California corporation with a place of business at 101 Glacier Point, Suite C, San Rafael, CA 94901.

3. Upon information and belief, Defendant Robin Cohn is the owner and principle responsible for City Hall located at 101 Glacier Point, Suite C, San Rafael, CA 94901. On information and belief, he resides at 1 Fairway Drive, San Rafael, CA 94901.

4. Upon information and belief, each Defendant was the agent of each of the other Defendant and, in doing the things alleged in this Complaint, was acting within the course and

scope of such agency.

## JURISDICTION AND VENUE

5. This is an action for trademark infringement arising under 15 U.S.C. §1114, false designation of origin, description or representation under 15 U.S.C. §1125(a) and trademark dilution under 15 U.S.C. §1125(c). This is also an action for common law copyright infringement, unfair competition, and unjust enrichment. This Court has subject matter jurisdiction pursuant to 15 U.S.C §1121, 28 U.S.C. §§1331, 1332, 1338(a)-(b) and supplemental jurisdiction pursuant to 28 § U.S.C. §1367.

6. This Court has personal jurisdiction over Defendants pursuant to NY CPLR §302, because Defendants have transacted business within the state of New York, contracted to supply goods or services in the state of New York, and/or committed tortious acts without the state of New York causing injury to person or property within the state of New York.

7. Venue for this action is properly laid in the United States District Court for the Southern District of New York under the provisions of 28 U.S.C. §§1391(b), 1400(a).

## FACTS

8. Capitol is one of the oldest and most respected companies in the music business. Founded in the 1940's, Capitol has a rich history of producing, recording, manufacturing, marketing, distributing, and selling sound recordings containing performances of musical compositions for some of the most beloved recording artists of our times, including, among others, the historic jazz figures whose recordings are at issue in this case.

9.  Capitol continues in that business today as one of the largest record companies in the world, distributing sound recordings throughout the United States and, through its foreign affiliates, across the globe in the form of records, compact discs, cassette tapes, and digital recordings, among others (collectively "albums").

10. Capitol has invested and continues to invest substantial sums of money, time, effort, and creative talent to manufacture, advertise, promote, sell, and license sound recordings embodying the performances of artists with whom they have agreements.  To sell sound recordings, Capitol employs hundreds of individuals who are engaged in the process of making, advertising, promoting, selling, licensing and protecting its music.

11. Capitol has entered into various agreements by which it obtained the sole, exclusive, and complete rights to manufacture, distribute, and sell certain recorded musical performances of popular recording artists, which are subject to protection under federal or state statutory and common law, including but not limited to the sound recordings contained on the albums identified on Exhibit A hereto and incorporated by reference herein ("Plaintiff Recordings").

12. Capitol is compensated for its creative efforts and monetary investments largely from revenue attributable to the sale of sound recordings to the public and the licensing of sound recordings to third parties.

13. Capitol often distributes and sells its sound recordings under one of its famous trademarks, including, among others, the trademarks CAPITOL, BLUE NOTE, IMPERIAL, LIBERTY and ALADDIN (hereinafter, "Capitol's Marks").  These marks are used to promote Capitol's artists and music.

14. Capitol has invested, and continues to invest, substantial sums of money, time, effort, and creative talent to promote and develop goodwill in Capitol's Marks.  It has developed a

- 3 -

strong reputation in these trademarks and works tirelessly to protect and further those reputations.

15. Capitol is the registrant and exclusive owner of the CAPITOL Mark pursuant to the following registrations issued by the U.S. Patent and Trademark Office: Registration No. 1663998 (for pre-recorded phonograph records, magnetic tapes, audio cassette tapes, video cassette tables, compact discs for entertainment and education), No. 1862994 (printed matter; namely, magazines and books all in the field of music and entertainment, sheet music, album covers and jackets for others), and No. 1981100 (sound recordings and video recordings, all featuring music and entertainment), among others. Capitol has continuously and exclusively used the trademark CAPITOL in commerce since the 1940s.

16. Capitol is the registrant and exclusive owner of the BLUE NOTE Mark pursuant to Registration No. 1928363 (musical sound recordings and video recordings featuring music entertainment), among others. Capitol and/or its predecessors in interest have continuously and exclusively used the trademark BLUE NOTE in commerce since 1939.

17. Capitol is the registrant and exclusive owner of the IMPERIAL Mark pursuant to Registration No. 2588213 (musical sound recordings), among others. Capitol and/or its predecessors in interest have continuously and exclusively used the trademark IMPERIAL in commerce since 1956.

18. Capitol is the registrant and exclusive owner of the LIBERTY Mark pursuant to Registration No. 1345827 (phonograph records, audio tape recordings, audio tape cassettes, audio tape cartridges, video tapes and video discs), among others. Capitol and/or its predecessors in interest have continuously and exclusively used the trademark LIBERTY in commerce since 1963.

19. Capitol is the registrant and exclusive owner of the ALADDIN Mark pursuant to Registration No. 2018196 (audio cassettes, tapes, compact discs and phograph records on which musical counsel have been recorded), among others. Capitol and/or its predecessors in interest have continuously and exclusively used the trademark ALADDIN in commerce since 1946.

20. As a result of Capitol's extensive sales, marketing, and advertising of Capitol's Marks in interstate commerce, they have become famous identifiers of top quality sound recordings. Consumers recognize that music sold with Capitol's Marks are from one of the premiere record companies in the world, is of very high quality, and is fully licensed and legitimate. Thus, Capitol's Marks are well known and famous within the scope of 15 U.S.C. §1125 (c).

21. City Hall and Cohn regularly advertise, offer for sale, promote, exploit and otherwise distribute within the state of New York and elsewhere sound recordings manufactured by companies that have no legal right to manufacture or distribute the recordings within the United States. Those companies include, but are not limited to: Proper, Memoir, Universe, Akarma, Living Era and Avid, among many others.

22. The Infringing Albums that Defendants City Hall and Cohn have sold, advertised, offered for sale, promoted, exploited and/or otherwise distributed without authority within the state of New York and elsewhere, embody performances by a large number of legendary artists, including but not limited to: Nat King Cole, Frank Sinatra, Bud Powell, Stan Kenton, Dean Martin, Miles Davis, Les Paul, Lester Young, Woody Herman, Thelonious Monk and Yma Sumac, among others. These artists are well known to have been signed to major recording labels, including Capitol, and that the rights to many of these artists' sound recordings are owned by Capitol.

23. Included among the many titles that City Hall and Cohn have sold, advertised, offered for sale, promoted, exploited and/or otherwise distributed without authority within the state of New York and elsewhere, are the albums set forth on Amended Exhibit A. These albums are not an exhaustive list of the infringing sound recordings that City Hall and Cohn have improperly sold, advertised, offered for sale, promoted, exploited and/or otherwise distributed without authority; rather, they are a sample of the many infringing albums in which they have conducted business. Among the sound recordings on these albums (for example, Nat King Cole's *Here's to My Lady*, Miles Davis' *Young Miles*, and Frank Sinatra's *Young at Heart*) are many bedrocks of the jazz genre.

24. None of the Plaintiff Recordings has ever been licensed to City Hall or Cohn for distribution in the United States. Nor are City Hall or Cohn authorized to create derivative works based on Plaintiff Recordings.

25. On information and belief, Defendants City Hall and Cohn intentionally and willfully promote, advertise, offer for sale, exploit, and distribute sound recordings owned and/or licensed to others, including Capitol. By doing so, Defendants take advantage of all of the investment the sound recording owners and licensors have made in creating and promoting the works, and avoid the costs associated with licensing those works and paying royalties. Moreover, Defendants have offered to sell and sold Plaintiff's recordings, using Capitol's Marks, to Plaintiff's customers and distributors.

26. On information and belief, City Hall and Cohn are continuing to sell, advertise, offer for sale, promote, exploit and/or otherwise distribute Plaintiff Recordings, for commercial advantage and private financial gain.

27. In order to promote and advertise the sale of the Infringing Albums, City Hall and

Cohn have used and adopted Capitol's Marks. The trademarks are regularly used by City Hall and Cohn on their website and in their catalog in order to promote the sale of the Infringing Albums.

28. Neither City Hall nor Cohn has obtained any rights, licenses, or authorization of any sort which would permit them to use Capitol's Marks.

29. On information and belief, by reason of City Hall's and Cohn's adoption and use of the Capitol's Marks, existing and potential customers of both Capitol and City Hall, as well as members of the public, believe there is a sponsorship, affiliation, licensing, and/or other business relationship between Capitol and City Hall and Cohn, when in fact no such relationship exists.

30. On information and belief, City Hall and Cohn infringed, and are continuing to infringe, Capitol's Marks with knowledge of the likelihood of confusion and dilution of Capitol's Mark, and with knowledge that such confusion and dilution would cause harm to Capitol.

31. On June 10, 2006, Plaintiff's representative sent a letter by Certified Mail, Return Receipt Requested to Robin Cohn and City Hall informing them of the unauthorized distribution of sound recordings owned and/or controlled by Plaintiff and its affiliates. The June 10, 2006 letter demanded, among other things, that City Hall and Cohn cease and desist its illegal distribution and contact Plaintiff's representative immediately.

32. On June 19, 2006, Defendants City Hall and Cohn responded by assuring Plaintiff that they would "take all reasonable steps to insure that no rights are infringed," and that "City Hall secures written assurances from each supplier that they have all rights to such items."

33. Despite these assurances, City Hall and Cohn continue to promote, advertise, and offer for sale the very same albums by the very same artists described in Plaintiff's correspondence to Defendants.

34. Upon information and belief, Defendants have acted willfully in violating and/or otherwise misappropriating Plaintiff's rights in the Plaintiff Recordings.

35. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  On information and belief, unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights.  Plaintiff is entitled to preliminary and permanent injunctive relief.

36. Upon information and belief, Defendants' actions have resulted in damages of at least $1,000,000.


## COUNT I
## COMMON LAW COPYRIGHT INFRINGEMENT

37. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. The conduct of Defendants was and continues to be copyright infringement under New York common law with respect to many sound recordings owned by Plaintiff, including Plaintiff Recordings, as set forth on Amended Exhibit A.

39. Plaintiff has been injured and continues to suffer irreparable injury for which there is no adequate remedy at law as a result of Defendants' unlawful and inequitable conduct.


## COUNT II
## UNFAIR COMPETITION

40. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 of this

Complaint as if fully set forth herein.

41. The conduct of Defendants as alleged above was and continues to be unfair competition under New York common law.

42. Plaintiff has been injured and continues to suffer irreparable injury for which there is no adequate remedy at law as a result of Defendants' unlawful and inequitable conduct.

## COUNT III
### UNJUST ENRICHMENT

43. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44. Defendants have profited from their unlawful activities, including distributing, selling, promoting and/or otherwise exploiting many of Plaintff's sound recordings, including but not limited to the Plaintiff Recordings, thereby reaping financial rewards without having to pay the costs required to license or create the material that it used.

45. By unlawfully taking Plaintiff's property and using it in the Infringing CDs without properly compensating Plaintiff, Defendants have obtained a windfall and have been enriched at Plaintiff's detriment and expense. Such actions constitute unjust enrichment.

46. Plaintiff has been injured as a result of Defendants' unlawful and inequitable conduct, and equity and good conscience require restitution.

## COUNT IV
### FEDERAL TRADEMARK INFRINGMENT
### (15 U.S.C. §1114)

47. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46 of this Complaint as if fully set forth herein.

- 9 -

48. Defendants' continued use of Capitol's Marks to market, promote and sell sound recordings is likely to cause confusion with Capitol's use of its trademarks in connection with related goods and services. Therefore, Defendants' use of Capitol's Marks is likely to cause confusion, mistake and deception among consumers and the general public as to Capitol's affiliation with Defendant, thereby causing loss, damage, and injury to Capitol and the purchasing public.

49. City Hall's use of Capitol's Marks for goods related to sound recordings constitutes infringement of Capitol's U.S. trademark registrations and related rights under U.S. trademark laws, including 15 U.S.C. §1051, et seq. and 15 U.S.C. §1114.

50. On information and belief, such infringement was and continues to be deliberate, willful, and with bad faith intent to appropriate the goodwill associated with the Capitol's Marks.

51. On information and belief, City Hall and Cohn knew or should have known that their adoption and continued use of Capitol's Marks would cause confusion, mistake or deception among consumers and the public.

52. On information and belief, City Hall and Cohn knew of Capitol's reputation and, by adopting and continuing to use Capitol's Marks, it intended to appropriate the goodwill associated with Capitol's federally registered trademarks.

53. Based on the foregoing actions taken by City Hall and Cohn, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

54. By reason of the aforementioned actions taken by City Hall and Cohn, Capitol has suffered monetary damages in an amount to be proven at trial.

55. By reason of the aforementioned actions taken by City Hall and Cohn, Capitol is entitled to the full range of relief available under the provisions of the Lanham Act and the laws of the United States relating to trademarks and unfair competition, including 15 U.S.C. §§1116-1118.

## COUNT V
## FALSE DESIGNATION OF ORIGIN, DESCRIPTION AND REPRESENTATION
## UNDER THE LANHAM ACT
## (15 U.S.C. §1125(a))

56. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. Capitol's Marks are designations of origin, identifying Capitol as the exclusive source of goods and services sold under those marks, and distinguishes and represents Capitol's goods and services in the marketplace.

58. The foregoing actions taken by City Hall and Cohn constitute false designations of origin, misrepresentations and unfair competition in violation of 15 U.S.C. §1125(a).

59. On information and belief, City Hall's and Cohn's conduct have been knowing, willful, and deliberate, and was intended to cause mistake or to deceive, completely disregarding Capitol's rights in Capitol's Marks.

60. As a result of City Hall's and Cohn's willful disregard of Capitol's rights, Capitol has suffered and will continue to suffer irreparable harm to its rights and substantial loss of goodwill and reputation.

61. Defendants' wrongful acts, as alleged above, have permitted it to profit from the strength of Capitol's Marks, in an amount not presently known but to be determined at trial..

62. Based on the foregoing actions taken by City Hall and Cohn, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

63. By reason of the aforementioned actions taken by City Hall and Cohn, Capitol has suffered monetary damages in an amount to be proven at trial, and has been willfully deprived of the value of its federally registered marks as a commercial asset in an amount to be proven at trial.

64. By reason of the aforementioned actions taken by City Hall and Cohn, Capitol is entitled to the full range of relief available under the provision of the Lanham Act and the U.S. laws relating to trademarks and unfair competition, including 15 U.S.C. §§1116-1118.

## COUNT VI
## TRADEMARK DILUTION UNDER THE LANHAM ACT
## (15 U.S.C. §1125(c))

65. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66. Capitol's Marks are distinctive and famous trademarks within the meaning of 15 U.S.C. §1125(c)(1).

67. City Hall's and Cohn's continued use of Capitol's Marks causes dilution of the distinctive quality of Capitol's famous marks.

68. On information and belief, City Hall and Cohn willfully intended to appropriate the goodwill associated with Capitol and its famous trademarks, and to cause dilution to the marks.

69. By reason of the aforementioned actions taken by City Hall and Cohn, Capitol has suffered monetary damages in an amount to be proven at trial, and has been willfully deprived of the value of its federally registered marks as a commercial asset in an amount to be proven at trial.

70. By reason of the aforementioned actions taken by City Hall and Cohn, Capitol is entitled to the full range of relief available under the provision of the Lanham Act and the laws of the United States relating to trademarks and unfair competition, including 15 U.S.C. §1116-1118.

WHEREFORE, Plaintiff seeks judgment as follows:

    a.    that Defendants be adjudged to have infringed Capitol's Marks in violation of 15

- 12 -

U.S.C. §1114;

  b.  that Defendants be adjudged to have violated the provisions of 15 U.S.C.

§1125(a) in competing unfairly with Capitol, by using false designations of origin, false

descriptions and representations in commerce to the damage of Capitol;

  c.  that Defendants be adjudged to have violated the provisions of 15 U.S.C.

§1125(c) in causing dilution of the distinctive quality of Capitol's Marks;

  d.  that Defendants' trademark infringements, trademark dilutions, false designations

of origin, and unfair competition be determined to be deliberate and willful;

  e.  that Defendant, its officers, directors, owners, partners, employees, servants, and

agents, and all those persons in active concern and participation with the defendant, and Cohn be

enjoined and restrained from violating Capitol's rights by way of:

    (i)   distributing, selling, promoting, or otherwise exploiting the
Plaintiff Recordings or any other works owned or exclusively
licensed by Capitol, including but not limited to Exhibit A;

    (ii)   using Capitol's registered trademarks, or any other confusingly
similar trademarks for or in connection with advertising,
marketing, promoting, selling or distributing goods or services
which are likely to cause confusion, mistake or deception with
Capitol's names, marks and designations;

    (iii)   practicing trademark infringement, false designation of origin,
trademark dilution, false advertising, unfair competition, and
unfair trade practices or misappropriation against Capitol;

    (iv)   practicing any conduct aimed at or likely to result in diverting
business intended for Capitol or injuring Capitol's goodwill and
business reputation by way of imitation, misrepresentation, false
statements, advertisements, fraud and/or deception;

  f.  that Plaintiff be awarded actual and compensatory damages for Defendants'

unlawful and inequitable activities;

g.      that Plaintiff be awarded a disgorgement of Defendants' gains, profits, and advantages derived from Defendants' unlawful and inequitable activities;

h.      that Plaintiff be awarded punitive or enhanced damages for Defendants' willful behavior, including but not limited to treble damages under 15 U.S.C. § 1117(a);

i.      that Plaintiff be awarded their reasonable attorneys' fees;

j.      that Plaintiff be awarded the costs of this action; and

k.      that Plaintiff be granted such other relief as the Court deems just and proper.


Dated: New York, New York
       January 7, 2008

                              CAPITOL RECORDS, INC.


                              By: /s/_____
                                      Matthew J. Oppenheim (MO1313)
                                      Oppenheim Group
                                      Attorney for Plaintiff

                                      7304 River Falls Drive
                                      Potomac, MD  20854
                                      301-299-4986
                                      866-766-1678 (fax)

                                      matt@oppenheimgroup.net

**CERTIFICATE OF SERVICE**

I hereby certify that the attached Amended was electronically served on January 8, 2008

on:

Michael Kelleher
Folger Levin & Kahn
275 Battery Street, 23rd Floor
San Francisco, CA  94111
(415) 986-2800
(415) 986-2827 (fax)
mkelleher@flk.com


Dated: January 8, 2008                          /s/ _____

                                                Matthew J. Oppenheim

*Capitol Records, Inc. v. City Hall Records, Inc. and Robin Cohn, 07 - 6488*

## AMENDED EXHIBIT A

| Artist | Album Title | Manufacturer |
|---|---|---|
| Lester Young | The Lester Young Story | Proper |
| Fats Navarro | The Fats Navarro Story | Proper |
| Stan Kenton | The Stan Kenton Story | Proper |
| Woody Herman | The Woody Herman Story | Proper |
| Coleman Hawkins | The BeBop Years | Proper |
| Dexter Gordon | Settin' the Pace | Proper |
| Miles Davis | Young Miles | Proper |
| Sidney Bechet | The Sidney Bechet Story | Proper |
| Anita O'Day | Young Anita | Proper |
| Bud Powell | Tempus Fugue-It | Proper |
| Ben Webster | Big Ben | Proper |
| Illinois Jacquet | The Illinois Jacquet Story | Proper |
| June Christy | Cool Christy | Proper |
| Thelonious Monk | Criss Cross | Proper |
| Frank Sinatra | Young at Heart | Proper |
| Nat King Cole | Unforgettable | Proper |
| Nat King Cole | Cool Cole | Proper |
| Jo Stafford | Yes! Indeed | Proper |
| Dean Martin | Aw C'Mon | Proper |
| Kay Starr | For Real | Proper |
| Nat King Cole | Here's to My Lady | Memoir |
| Landslide | Two Sided Fantasy | Akarma |
| Les Paul | Isle of Golden Dreams | Universe - Italy |
| Compilation | Hittin' On All Six – A History Of Jazz Guitar | Proper |
| Yma Sumac | Voice of Xtaby | Universe - Italy |
| Yma Sumac | Inca Taqi | Universe - Italy |
| Yma Sumac | Mambo! | Universe - Italy |

| Artist | Album Title | Manufacturer |
|---|---|---|
| Les Baxter & His Orchestra | Ritual of the Savage | Universe - Italy |
| Merle Travis | Back Home | Longhorn |
| Joe Maphis, Rose Lee | With the Blue Ridge Mountain Boys | Longhorn |
| Husky Ferlin | Walkin' and Hummin' | Longhorn |
| Compilation | BeBop Spoken Here | Proper |
| Compilation | The Engine Room – A History Of Jazz Drumming | Proper |
| Nat King Cole | 1947-1949 | Classics (France) |
| Thelonious Monk | 1947-1978 | Classics (France) |
| Fats Domino | 1949-1951 | Classics (R&B) |
| Lightnin Hopkins | 1946-1948 | Classics (R&B) |
| Frank Sinatra | The Nelson Riddle Year | Avid |
| Compilation | Rat Pack:  The Early Years | Avid |
| Tennessee Ernie Ford | Howdy Pea Pickesr | Living Era |
| Dean Martin | That's Amore - Early Dino | Living Era |
| Les Baxter & His Orchestra | Unchained Melodies | Living Era |
| Nat King Cole | Nature Boy | Living Era |
| Peggy Lee | It's a Good Day | Living Era |
| Stan Kenton | Early Artistry in Rhythm | Living Era |
| Miles Davis | Milestones (Birth of Cool) | Living Era |
| Les Paul & Mary Ford | How High the Moon | Living Era |
| Nellie Lutcher | Hurry on Down | Living Era |
| Tex Ritter | High Noon | Living Era |
| June Christy | Sings Something Cool | Living Era |
| Frank Sinatra | Young at Heart | Living Era |

EXHIBIT "C"



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAPITAL RECORDS,

                 Plaintiff(s),

     -against-

CITY HALL RECORDS,

                 Defendant(s).

No. 07 Civ. 6488 (LTS) (KNF)

PRE-TRIAL
SCHEDULING
ORDER

LAURA TAYLOR SWAIN, DISTRICT JUDGE:

        A pre-trial conference was last held in this matter on January 24, 2008. The Court hereby makes the following provisions for scheduling and trial in this matter. To the extent copies of this Order were not distributed to all parties in open court, Plaintiff's counsel[1] shall serve a copy of this Pre-Trial Scheduling Order on counsel for each other party and on each unrepresented party within ten (10) days from the date hereof, and a copy of this Pre-Trial Scheduling Order shall be served with any subsequent process that brings in additional parties. Proof of such service shall be filed promptly with the Court.

1.   <u>Amendments to Pleadings, Additional Parties</u>

     All applications to amend pleadings or amendments as of right shall be made, and any additional parties joined, by **February 29, 2008.**

2.   <u>Discovery</u>

    a.   All non-expert witness discovery in this matter shall be completed by **October 31, 2008.**

    b.   Plaintiff(s) shall make expert witness disclosures described in Rule 26(a)(2) of the Federal Rules of Civil Procedure no later than **60 days before the date set forth in paragraph 2.c. below.** Defendant(s) shall make such disclosures no later than **30 days before the date set forth in paragraph 2.c. below.** Such disclosures shall be made in writing, signed and served, but shall <u>not</u> be filed with the Court.

---

   [1]   As used in this Pre-Trial Scheduling Order, the term "counsel" shall, in the case of an individual party who is proceeding Pro-se, mean such party.

     c.     All expert witness discovery shall be completed by **January 12, 2009**.

3.    Dispositive Pre-Trial Motions

Dispositive motions, if any, seeking resolution, in whole or in part, of the issues to be raised at trial shall be served and filed on or before **February 27, 2009**. No pre-motion conference is required, but the parties must comply with the consultation and certification requirements of Paragraph 2.B. of the Individual Practices Rules of the undersigned. If the movant believes the motion, if granted, would obviate entirely the necessity of a trial in this matter, the movant shall so state in a separate MOTION FOR STAY, which shall be served and filed with the moving papers, and may in such stay motion request that the Court defer the remaining requirements of this Order pending its decision on the dispositive motion. Unless the Court grants such stay motion, the filing of a dispositive motion <u>does</u> <u>not</u> affect the parties' obligations under this Order.

4.    Other Pre-Trial Motions

Other motions, including but not limited to motions <u>in</u> <u>limine</u> relating to evidentiary issues, must be filed and served no later than thirty (30) days before **the date set forth in paragraph 9 below**, unless otherwise allowed by the Court for good cause shown.

5.    Preliminary Conference

Counsel for the parties shall confer preliminarily at least forty-five (45) days before **the date set forth in paragraph 9 below**. At or prior to this preliminary conference, counsel shall provide copies of each proposed exhibit for inspection by opposing counsel and for waiver or noting of objection and shall make the disclosures required by Fed. R. Civ. P. 26(a)(3). At the preliminary conference, counsel shall discuss (a) settlement, (b) any anticipated further motion practice, including motions <u>in</u> <u>limine</u>, and (c) the matters required to be addressed in their Joint Pre-Trial Statement, as set forth in paragraph 6 below.

6.    Joint Pre-Trial Statement

Counsel for all parties shall confer and shall prepare, execute and file with the Court, with one courtesy copy provided to chambers of the undersigned, no later than ten (10) days before **the date set forth in paragraph 9 below**, a single document captioned JOINT PRE-TRIAL STATEMENT, which shall include:

    a.     A concise statement of the legal issues to be decided.
    b.     A concise statement of the material facts not in dispute.
    c.     A witness list containing the names, addresses and a brief summary of the

testimony of each witness each party will call. A person not identified on this list may not be called during a party's case in chief.

d.    A final exhibit list in tabular form containing the following information for all exhibits to be offered at trial. Exhibits not identified on this list may not be offered during a party's case in chief. The format shall be substantially as illustrated below.

| Exhibit Number or Letter | Description | Objection(s), if any | Status |
|---|---|---|---|
|  |  |  |  |

i.    Plaintiff's exhibits shall be identified by numbers (e.g., Plaintiff's Exhibit 1, Plaintiff's Exhibit 2) and Defendant's Exhibits shall be identified by letters (e.g., Defendant's Exhibit A, Defendant's Exhibit B). If there is more than one Plaintiff or Defendant, the parties shall coordinate their designations so as to avoid duplication.

ii.    In the "Objection(s)" column of the table, one asterisk should be entered to indicate exhibits to which no party objects on grounds of authenticity, and two asterisks should be entered to indicate exhibits to which no party objects on any ground. Any objections must be explained briefly, with citation to the relevant Federal Rule of Evidence or other legal authority.

iii.    The "Status" column should be left blank, for later use by the Court.

e.    A list of the depositions, if any, to be offered at trial, with notation and explanation (including citation to the relevant legal authority) of any objections to the designations.

f.    Stipulations, if any, as to the admissibility of exhibits and depositions.

g.    Each party's statement as to whether the case is to tried before a jury.

h.    A statement as to whether or not all parties consent to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).

i.    Each party's estimate of the time required for presentation of its case.

When feasible, the Joint Pre-Trial Statement should also be submitted to Chambers on a CD-Rom in WordPerfect version 6 or higher format.

The following documents must be annexed to, or submitted to Chambers concurrently with, the Joint Pre-Trial Statement:

One copy of each documentary exhibit to be offered at trial. Such exhibits must be pre-marked. In the event that a party intends to offer more than 15 documentary exhibits at the trial, the exhibits should be tabbed and included in a binder for easy reference. On the day of trial, counsel shall bring additional pre-marked copies for use by witnesses, the courtroom deputy, the court reporter, opposing parties and (if applicable) the jury.

7.    Proposed Voir Dire, Requests to Charge and Verdict Form

    a.    In a case to be tried before a jury, and no later than five (5) business days before **the Final Pre-Trial Conference date set forth in paragraph 9 below**:

        i.    each party shall serve on each other party and file with the Court its proposed voir dire and verdict form. Prior to service and filing of the proposed voir dire and verdict form, counsel shall provide copies to opposing counsel for inspection and noting of objection; and

        ii.    The parties shall file a single document captioned JOINT REQUESTS TO CHARGE, which shall include the full text of all of their respective proposed jury instructions and a brief explanation of the objections, if any, to any disputed requests to charge, with citations to the relevant legal authority.

    b.    When feasible, proposed voir dire, requests to charge and verdict forms shall also be submitted to Chambers on a CD-Rom in WordPerfect version 6 or higher format.

8.    Proposed Findings of Fact and Conclusions of Law

If the case is not to be tried before a jury, each party shall serve on each other party and file with the Court its proposed findings of fact and conclusions of law, which shall be broken down into separately enumerated paragraphs, no later than five (5) business days before **the Final Pre-Trial Conference date set forth in the following paragraph**. When feasible, the proposed findings of fact and conclusions of law should also be submitted on a CD-Rom in WordPerfect version 6 or higher format.

9.    Final Pre-Trial Conference

The parties are directed to appear before the undersigned in Courtroom No. 17C[2], 500 Pearl Street, New York, NY 10007, for a final pre-trial conference on **May 8, 2009**, at

---

[2]On the day of the conference, check the electronic board in the lobby to be certain of the proper courtroom.

**10:00 a.m.** The purpose of the conference is to explore the possibility of settlement, schedule the trial (which shall, the Court's calendar permitting, commence within two weeks after the conference) if necessary, to review the issues to be tried and the proof to be offered in connection therewith, and to resolve any remaining pre-trial issues.

The counsel who plan to try the case must appear at such conference. Counsel attending the conference shall seek settlement authority from their respective clients prior to such conference. If counsel is not granted such authority, the client must be present in person or available by telephone so that a settlement can be consummated if possible. "Settlement authority," as used in this order, includes the power to enter into stipulations and make admissions regarding all matters that the parties may reasonably anticipate discussing at the pre-trial conference including, but not limited to, the matters enumerated in this Pre-Trial Scheduling Order.

The Court will not adjourn the final pre-trial conference or excuse the appearance of a party or its counsel unless a stipulation of settlement is on file prior to the pre-trial conference date set forth in this paragraph 9.

10.    No Adjournment of Deadlines

The deadlines set forth in this Pre-Trial Scheduling Order will not be adjourned except in the Court's discretion upon good cause as shown in a written application signed by both counsel and counsel's client and served upon all parties. "Good cause," as used in this paragraph, does not include circumstances within the control of counsel or the client.

11.    Non-Compliance with This Order

In the event that any party fails to comply with this Pre-Trial Scheduling Order, or is not prepared to go forward with trial on the date scheduled, the Court may impose sanctions or take other action as appropriate. Such sanctions and action may include assessing costs and attorney's fees, precluding evidence or defenses, dismissing the action, granting judgment by default, and/or other appropriate penalties.

In particular, the parties are advised that the Court may, without further hearing, render judgment in favor of the adverse party if a party is not prepared to proceed to trial within two weeks of the scheduled final pre-trial conference date.

12.    <u>Other Matters</u>

The parties shall promptly begin meeting with Judge Fox for settlement purposes.


IT IS SO ORDERED.

Dated:      New York, New York
            January 24, 2008


            _____
            LAURA TAYLOR SWAIN
            United States District Judge