UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
CAPITOL RECORDS, INC.,            :

        Plaintiff,               :

   -vs-                                   :   Civil Action No: 07-cv-6488
                                            (LTS)(KNF)
CITY HALL RECORDS, INC. and ROBIN   :
COHN,
                                          :

        Defendants.           :
-------------------------------------------------------------- x

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE A THIRD PARTY COMPLAINT

      Plaintiff, Capitol Records, Inc. ("Capitol Records") hereby opposes Defendants' Motion for Leave to File a Third-Party Complaint (hereinafter, "Defendants' Motion").

      Defendants' putative Third-Party Complaint seeks to implead eighteen third-party defendants, the vast majority of which are located overseas, on claims of indemnification and contribution. Defendants seek to add these additional parties in order to forestall Plaintiff Capitol Records' case against them and to create a trial setting that would confuse even the most vigilant of juries. Should the Court grant Defendants' Motion, it will significantly complicate the existing case by injecting new parties and new claims with entirely unrelated factual and legal issues.

      Moreover, Defendants' putative Third-Party Complaint is replete with diaphanous assertions, based almost entirely "on information and belief," that fail to support the claims that

1

the putative third-party defendants are liable for contribution and indemnification. As such, permitting Defendants' Third-Party Complaint to be filed would be futile since it would likely fall victim to a Rule 12(b)(6) motion at a later date. For all these reasons, as described more herein, Defendants' Motion should be denied.

## BACKGROUND

Plaintiff Capitol Records is one of the oldest and most cherished record companies in the world. Founded in the 1940's, Capitol Records sells and licenses its extensive catalog of recordings, including thousands of famous jazz sound recordings. When Capitol Records sells jazz albums to the public, it does so under one of its famous trademarks, such as, Capitol, Blue Note, Imperial, Liberty and Aladdin. These marks are well-known to the public and especially to jazz music consumers. Capitol regularly uses these trademarks to promote Capitol's artists and music.

Defendant City Hall Records, Inc. is a music distribution company that distributes albums to retailers. Defendant Robin Cohn is the founder, president and owner of City Hall. In 2006, Capitol Records discovered that City Hall and Cohn were selling an extensive catalog of jazz albums that contained sound recordings owned by Capitol Records and use Capitol's well known trademarks. These recordings were of some of the best known jazz artists of our time, including: Nat King Cole, Frank Sinatra, Peggy Lee, Miles Davis, and Thelonius Monk, among others. The albums City Hall and Cohn were selling, however, had not been licensed by Capitol Records to be distributed in the United States. They were unauthorized and infringing.

On July 16, 2007, after pre-litigation efforts to settle this matter failed, Plaintiffs filed suit asserting claims of common law copyright infringement, unfair competition, unjust enrichment,

federal trademark infringement, false designation of origin, description and representation, and trademark dilution. Defendants were served with the Complaint on August 20 and 27, 2008. *Docket Nos. 3 and 5.* Thereafter, Defendants' sought and received successive extensions of time to file an answer. On January 7, 2008, Plaintiff served Defendants with an Amended Complaint. The new Complaint was substantively the same as the initial Complaint but included additional examples of infringing albums.[1] On January 9, 2008, Defendants finally answered the Complaint. *Docket No. 15.* The parties jointly submitted a Case Management Plan proposing that fact discovery should be completed by October 31, 2008, a deadline ultimately adopted by the Court. *Docket Nos. 17 and 19.* Simultaneous with the submission of the Case Management Plan, the parties submitted to the Court a Stipulated Protective Order which has also been adopted. *Docket No. 21.*

Since the entry of the Scheduling Order, the parties have been actively engaged in the discovery process. On February 15, 2008, Plaintiff produced to Defendants over a thousand pages of documents substantiating their ownership rights to the underlying copyrighted works and trademarks. Plaintiff has also repeatedly provided Defendants with updated lists of disputed albums and responded to requests to provide additional information regarding those disputed albums. Plaintiff has also served significant discovery requests on Defendants. Beginning in February 2008, Plaintiff served City Hall Records with Interrogatories, Requests for Production of Documents and Things, and Requests for Admission. Defendant City Hall has responded to the Requests for Admission and requested extensions of time to respond to the other discovery requests. Plaintiff has also served Defendant Robin Cohn with Interrogatories, Requests for Production of Documents and Things and Requests for Admission. Defendants' assertion that

---

[1] Due to ECF filing difficulties, the Amended Complaint was not docketed with the clerk until February 15, 2008. *Docket No. 28.*

3

"there has been no formal exchange of discovery by the parties to date" is simply not accurate. See, *Defendants' Memorandum of Law in Support of Defendants' Motion for Leave to File a Third-Party Complaint* (hereinafter, "*Defendants' Memorandum*") *at 6*.

On February 29, 2008, Defendants filed a Third Party Complaint without seeking leave of court. *Docket No. 29.* After letter submissions by the parties, the Court subsequently instructed Defendants to withdraw the Third Party Complaint and seek leave by way of motion pursuant to Fed. R. Civ. Pro. 14(a). *Docket No. 36*.

On March 24, 2008, Defendants' filed their present Motion for Leave and attached thereto the putative Third-Party Complaint.[2] Defendants' putative Third-Party Complaint seeks to name eighteen unrelated entities located largely outside of the United States, from Germany, Italy, England and France. *Putative Third-Party Complaint* (hereinafter cited as "*PTPC*") *at ¶¶ 3-20*. Virtually every averment in the thirty-two paragraph complaint is made "on information and belief." Of the thirty-two paragraphs, only two contain any substantive allegations to support the claims for contribution and indemnification.[3] The entire basis for the indemnification claim is as follows:

---

[2] Notably, the putative Third-Party Complaint attached to the present Motion differs materially from the one that Defendants had previously filed.

[3] The thirty-two (32) paragraphs include twenty (20) to name the parties, three (3) for jurisdiction and venue, three (3) to describe Plaintiff's underlying suit, two (2) to repeat and reallege the former averments and two (2) to describe the elements of contribution and indemnifications claims.

>Third-Party Defendants are manufacturers and/or current and former suppliers to defendants/third-party plaintiffs of the allegedly infringing sound recordings that, upon information and belief, entered into or assumed oral and/or written contracts including indemnification provisions requiring Third-Party Defendants to indemnify defendants/third-party plaintiffs and met with them within the United States for purposes of distributing the allegedly infringing materials within the United States.

*PTPC at ¶27.*

The contribution claim is similarly thin:

>Upon information and belief, to the extent there was any infringement, third party defendants caused, or materially contributed to the sale of infringing sound recordings and use of infringing trademarks by defendants/third party plaintiffs, and the unfair competition, consumer confusion, trademark dilution, and unjust enrichment that resulted as a consequence. To the extent that there was any infringing activity, the third-party defendants acted with knowledge of the infringing activity.

*PTPC at ¶28.*

## ARGUMENT

Pursuant to Rule 14(a), Defendants must obtain the Court's leave to file a third-party complaint since more than ten (10) days have passed since serving their original answer. *Fed. R. Civ. Pro. 14(a).* "The decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 30 (2nd Cir. 1984). "Although Rule 14(a)'s purpose is to promote judicial economy, . . . the right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court." *Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y. 1987); see also, *Rodolico v. Unisys Corp.*, 189 F.R.D. 245, 249 (E.D.N.Y. 1999).

Defendants have properly stated the factors to be considered in determining whether to grant leave to implead third-party defendants: (i) whether the movant deliberately delayed or was derelict in filing the motion; (ii) whether impleading would unduly delay or complicate the trial; (iii) whether impleading would prejudice the third-party defendant; and (iv) whether the third-party complaint states a claim upon which relief can be granted. *Rodolico*, 189 F.R.D. at 249. In considering these factors, "the court must balance the benefits derived from impleader - that is, the benefits of settling related matters in one suit - against the potential prejudice to the plaintiff and third-party defendants.'" *Gross v. Hanover Ins. Co.,* 138 F.R.D. 53, 55 (S.D.N.Y. 1991).

The first, second and fourth factors all weigh against granting leave to amend.[4] Under the first factor, whether or not the defendant deliberately delayed or was derelict in filing its motion, the Court must consider that Defendants waited until March 24, 2008 to seek leave. Defendants were originally put on notice of Plaintiff's claims in June 2006, and they were sued on those claims in July 2007. Under the second factor, whether impleading would unduly delay or complicate the trial, the Court must consider the substantial impact and delay that would be associated with adding eighteen unrelated parties from at least four different foreign jurisdictions that will raise legal issues unassociated with Plaintiff's underlying claims which will likely require application of foreign law. Under the fourth factor, whether the third-party complaint states a claim, the Court must consider that the substantive allegations contained in the putative Third-Party Complaint are so thin that it will not likely survive a Rule 12 motion. There are but two substantive paragraphs in which Defendants assert their claims for contribution and indemnification. Those paragraphs, averred on information and belief, are largely conclusory,

---

[4] Plaintiff does not address the third factor, whether impleading would prejudice the third party defendants. Plaintiff has no reason to believe that the putative third party Defendants would be prejudiced should impleader be permitted.

6

fail to allege the essential elements of the claims and do not specify which claims apply as to which defendants.

I.  **DEFENDANTS WERE DERELICT IN ASSERTING CLAIMS AGAINST THIRD PARTY DEFENDANTS.**

The first factor to consider in determining whether to grant leave to file a Third Party Complaint is whether the defendants deliberately delayed or were unduly derelict in filing their motion seeking leave. *Too, Inc. v. Kohl's Dept. Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y. 2003) (citing *Rodolico*, 189 F.R.D. at 249 (E.D.N.Y. 1999)). Defendants' Memorandum erroneously, and conveniently, measures the time period from the date when Plaintiff filed its Amended Complaint, in February 2008. *Defendants' Memorandum at 6*. That is not the measure. Whether or not a defendant is derelict in filing a third party complaint is measured against the time when the party was on notice about the facts and legal theories asserted in the claims against the third-party defendants. *Ispat v. Kemper Environmental Ltd*, 2007 U.S. Dist. LEXIS 55851 (S.D.N.Y. 2006) (measuring delay from when defendant had "constructive, if not actual, knowledge of the facts giving rise to its third party complaint"); *Embassy Electronics Ltd. v. Lumbermens Mut. Cas. Co.*, 108 F.R.D. 418, 420 (S.D.N.Y. 1985) (same).

In the case at bar, Plaintiff initially put Defendants on notice of the facts and its legal theories in June 2006 when Plaintiff first sent notice to the Defendants of the ongoing infringement. While Defendants might argue that it had no obligation to assert its contribution and indemnity claims upon receipt of the initial demand letter in 2006, they cannot reasonably argue that they were not on notice in July 2007 when the Complaint was first filed. Plaintiff's amendments to the Complaint have served only to further specify the albums that are infringing and are not the appropriate time from which to measure when Defendants were on notice.

Defendant bears the burden of providing a "reasonable excuse" for their delay. *Ispat*, 2007 U.S. Dist. LEXIS 55851, at *3; *Hicks v. Long Island R.R.*, 165 F.R.D. 377, 380 (E.D.N.Y. 1996); *Oliner v. McBride's Indust's*, 106 F.R.D. 14, 21 (S.D.N.Y. 1985). If a defendant cannot provide a "reasonable excuse" after receiving notice, then the courts will deny the impleader due to the defendant's dereliction. *In re Agent Orange Product Liability Litigation*, 100 F.R.D. 778, 781 (E.D.N.Y. 1984).

Defendants cite to *In re Agent Orange*, 100 F.R.D. 778 (E.D.N.Y 1984), to support their argument that delay can only exist where discovery has been conducted and trial is close at hand. *In re Agent Orange*, however, supports Plaintiff's position. In that case, the court specifically denied defendants the right to implead third parties on the grounds that defendant was "on notice from the time of the filing of the first complaint of all facts relevant to the impleader claim" and gave no excuse for its delay. *Id.* at 780; see also, *New York v. Solvent Chem. Co.*, 179 F.R.D. 90, 94 (W.D.N.Y. 1998).

In the case at bar, Defendants have not sustained their burden of providing a reasonable excuse for the delay. Based on this factor alone, Defendants' Motion should be denied.

**II. PERMITTING DEFENDANTS' PUTATIVE THIRD PARTY COMPLAINT TO BE FILED WILL UNDULY DELAY AND COMPLICATE TRIAL.**

The second factor to consider in deciding whether to grant leave to assert third party claims is whether impleading will unduly delay or complicate trial. *Too, Inc. v. Kohl's Dept. Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y. 2003) (citing *Rodolico*, 189 F.R.D. at 249). Defendants argue that impleader will not cause any delay because discovery has only recently been served. *Defendants' Memorandum at 6.* This argument, however, ignores the inevitable and substantial delay that will necessarily occur if Defendants' putative Third-Party Complaint

were permitted to be filed. The case in its current form is a relatively straightforward case for which the parties are currently on schedule to complete discovery by October 31, 2008. Should Defendants be permitted to file their putative Third-Party Complaint, the current schedule would have to be extended, significantly. Indeed, for the reasons described below, it is quite likely that the schedule would be adjusted by, at least, one year, and likely more. Moreover, the case and ultimate trial would become convoluted by the presence of many additional parties and new legal and factual issues.

      **A.**     **Permitting Impleader Will Cause Undue Delay.**

Defendants' putative Third-Party Complaint seeks to add eighteen third-party defendants to the case. Of those, fifteen of them are located outside of the United States, in Spain, Italy, Germany and the United Kingdom. The fact that these putative third-party defendants are located outside of the United States will, undoubtedly, cause substantial delay in the underlying case. *Riccitelli v. Water PikTech.*, 203 F.R.D. 62, 65 (D.N.H. 2001) (impleading foreign corporation significant factor in denying leave to file third-party complaint).

For service alone, Defendant will have to serve pursuant to the Hague Convention on the Service of Abroad of Judicial and Extrajudicial Documents. See Fed. R. Civ. Pro. 4(f). The procedure for serving process under the Hague Convention varies from country to country, but inevitably requires significant time. For example, in order to accomplish service in Italy, Defendants will have to provide a translated version of the Complaint, as well as translated copies of all of the relevant forms, that need to be sent to the Italian Central Authority. See, *http://travel.state.gov/law/info/judicial/judicial_653.html#summary*. Since service in Italy can only be accomplished by judicial officers working for the Italian courts, this process is anything but fast. This process of serving all of the putative third-party defendants will be made all the more difficult by virtue of the fact that Defendants' apparently only have limited information

regarding the location and nature of their businesses. Every single allegation regarding the nature and location of the putative third-party defendants is made on information and belief. See PTPC ¶¶ 3 - 20. It is entirely likely that the putative third-party defendants would not even be served prior to the October 31, 2008 deadline currently set for fact discovery to close.

Beyond the delays associated with serving fifteen different foreign entities, there are likely to be a number of Rule 12 motions filed. In the first instance, the putative third-party defendants may argue that the Court does not have personal jurisdiction over them. The sole allegation regarding personal jurisdiction contained in the putative Third-Party Complaint is as follows: "Third Party Defendants' representatives reached out to defendants/third-party plaintiffs and met with them within the United States for the purposes of distributing the allegedly infringing materials within the United States." PTPC at ¶ 27. Not only does this blanket allegation not likely apply to each putative third-party defendant, it does not provide any information regarding whether the putative third-party defendants engaged in tortuous conduct sufficient to fulfill the requirements of New York's Long Arm Statute. *See, NY CLS CPLR §302 (2008).* From a timing perspective, disputes regarding personal jurisdiction can frequently end up requiring separate discovery on the issue of jurisdiction prior to the briefing of a Rule 12 motion. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 13, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1977) ("Where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.") Such a process would further add to delay the current proceeding.

All in all, the time that is likely necessary to serve the defendants, resolve jurisdictional issues and resolve a motion to dismiss could delay the case by a year or more. And, that delay is

limited to the time it would take to bring the putative third-party defendants up to the point of resetting the current Scheduling Order for discovery.

Should all eighteen putative third-party defendants be added to this case and participate in the discovery process, it would undoubtedly delay the case even more. Not only would there be an increase in the quantity of discovery as between all of the parties, but the coordination of the discovery process with eighteen additional parties, many of whom are overseas and speak languages other than English, would become significantly more complex and extended. These types of delays could forestall the case by an additional six months to one year.

### B.     Permitting Impleader Will Complicate Trial.

The current case involves relatively straightforward legal and factual questions. At bottom, Plaintiff has alleged that Defendants have infringed their copyrights and trademarks. While there are a significant number of copyrighted works at issue, the legal and factual issues are not complex. The same cannot be said with respect to Defendants' indemnification and contribution claims.

Defendants' putative Third-Party Complaint seeks to assert an indemnification claim against each of the putative third-party defendants. Defendants' putative Third Party Complaint alleges "upon information and belief" that the Third Party Defendants "entered into or assumed oral and/or written contracts including indemnification provisions requiring Third-Party Defendants to indemnify defendants/third-party plaintiffs and to hold them harmless." PTPC at ¶ 27. This allegation raises more factual questions than it answers. In order for Defendants to succeed on their indemnification claim, they will have to establish documentary proof that there is a right to indemnification with respect to each of the eighteen different putative third-party defendants. *See infra*, Section 3.A. Proving that there is a right to indemnification may require

the application of choice of law principles to determine whether the laws of each of the foreign jurisdictions control the existence and extent of any indemnity obligation. The legal and factual issues involved in establishing the right to indemnification have no overlap with the existing issues in the case.

Similarly, Defendants putative Third-Party Complaint seeks to assert a claim of contribution against each of the putative third-party defendants. Defendants have alleged that the putative third-party defendants are subject to contribution claims because they had knowledge of the infringing activity and contributed to it. PTPC at ¶ 28. Apart from the fact that this allegation is inadequate to sustain a contribution claim, *see infra, Section 3.B.,* the legal and factual issues that it raises are entirely different from the present issues. At trial, there would be testimony and documents relating to the putative third-party defendants' state of knowledge and participation in the Defendants' infringement. These are not issues that would otherwise be before the Court.

Should the Court permit Defendants' putative Third-Party Complaint to proceed, then the trial of this case would conflate two entirely separate set of facts: whether Defendants infringed Plaintiffs' copyrights and trademarks with whether the third-party defendants have indemnity and contribution obligations to Defendants. Adding these new legal and factual issues would have the effect of taking a fairly straightforward case and substantially complicating it.

III.  **DEFENDANTS' PUTATIVE THIRD PARTY COMPLAINT CANNOT SURVIVE A MOTION TO DISMISS.**

The fourth factor to consider in determining whether to grant leave to permit impleader is "whether the third-party complaint states a claim upon which relief can be granted." *Too, Inc. v. Kohl's Dept. Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y. 2003) (citing *Rodolico*, 189 F.R.D. at 249).

The pleading standard for Rule 14 gives the court considerable discretion in deciding whether to permit a third-party complaint, and the court has no less discretion in considering the fourth factor's requirement that the third-party complaint must "state a claim upon which relief can be granted." *Too, Inc.*, 213 F.R.D. at 140 (citing *Kenneth Leventhal & Co.*, 736 F.2d at 31). (Because the purpose of Rule 14 is judicial efficiency and because a court's decision to deny impleader does not prejudice the defendant's right to bring the same claims against the third-party defendants in a separate action, a court does not need to be as protective of the third-party plaintiff's claim as would be required in a Rule12(b)(6) motion to dismiss. *Embassy Electronics, Ltd.*, 108 F.R.D. at 420; *Oliner,* 106 F.R.D. at 20.

Nevertheless, even under the Rule 12(b)(6) standard — which itself is far stricter than the Rule 14 standard for dismissing a claim — Defendants have not stated a claim upon which relief could be granted because their putative Third-Party Complaint is so lacking in facts that it is not even minimally plausible.  As the Supreme Court has recently explained, a plaintiff must "provide the 'grounds' of his 'entitlement to relief'" and this pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  More specifically, the complaint must allege "enough facts to state a claim to relief that is plausible on its face" and if parties "have not nudged their claims across the line from conceivable to plausible, their

13

complaint must be dismissed." *Twombly*, 127 S.Ct. at 1974.  The Second Circuit has confirmed and itself applied the *Twombly* pleading standard, interpreting *Twombly* to require "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim **plausible**." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

Whether under the more easily denied Rule 14 standard, or the stricter Rule 12(b)(6) standard, Defendants have utterly failed to state a claim upon which relief could be granted.  Relying on mere assertions and repeated incantations of "information and belief," the putative Third-Party Complaint is so lacking in factual allegations for Defendants' contribution and indemnification claims that it could not possibly satisfy even the *Twombly* "plausibility" standard for Rule 12(b)(6), let alone the looser standard for denying a Rule 14 impleader.

### A.     Defendants' Indemnification Claim Fails.

As support for Defendants' indemnification claim, they assert "upon information and belief" that the putative third-party defendants "entered into or assumed oral and/or written contracts including indemnification provisions requiring Third-Party Defendants to indemnify defendants/third-party plaintiffs and to hold them harmless." PTPC at ¶ 27.  To prove a claim for indemnification, defendants must show explicit, documentary proof of such contractual indemnification. *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 27 (Ct. App. 1985) ("there can be no liability for contractual indemnification unless it is explicitly assumed").  Asserting in conclusory fashion "upon information and belief" that there are oral or written contracts between Defendants and the putative third-party defendants that permit indemnification does not satisfy the pleading requirement to show a basis for a contractual right to indemnification.

Because Defendants have not proven that they have a contractual right to indemnification, they are barred by state law from asserting common law indemnification.

Under New York law, common law indemnification is barred when a party seeking indemnification is itself at fault. *Too, Inc.*, 213 F.R.D. at 143; *Monaghan v. SZS 33 Assoc's, L.P.*, 73 F.3d 1276, 1284 (2d Cir. 1996); *Rosado*, 66 N.Y.2d at 27. Because Defendants would themselves be at fault if Plaintiffs' allegations are proven to be true, New York law bars their being able to claim common law indemnification.

Given that Defendants have failed to proven any right to indemnification under any contractual clause with any putative third-party defendant, and because they would be barred from common law indemnification, their putative Third-Party Complaint fails to state a claim for which relief could be granted with respect to their indemnification claim.

### B. Defendants' Contribution Claim Fails.

As support for Defendants' contribution claim, they assert that the putative third-party defendants "reached out to defendants/third-party plaintiffs and met with them within the United States for the purposes of distributing the allegedly infringing materials within the United States." PTPC at ¶ 27. This claim, standing on its own, cannot support a claim for contribution. To be joint tortfeasors sufficient for contribution under New York Civil Practice § 1401, the putative third-party defendants must have performed some action that would make them "subject to liability for damages for … injury to property." The extent of Defendants allegations of misconduct by the putative third-party defendants is: "to the extent that there was any infringement, third party defendants caused or materially contributed to the sale of infringing sound recordings and use of infringing trademarks by defendants…" PTPC at ¶ 28. Without more, these conclusory factual allegations cannot support a claim for contribution.

Given that Defendants have not pled a single fact that suggests even a single infringing activity by the putative third-party defendants, Defendants have not stated a claim on which relief can be granted with regard to their contribution claim.

## CONCLUSION

In light of the foregoing, Defendants' Motion for Leave to File a Third-Party Complaint should be denied.

Dated: April 14, 2008                                                Respectfully Submitted,


 By: /s/_____
Matthew J. Oppenheim, Esq.
*Attorney for Plaintiff*

The Oppenheim Group
7304 River Falls Drive
Potomac, MD  20854
301-299-4986
866-766-1678 (fax)
matt@oppenheimgroup.net

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2008, I served Plaintiff's Opposition to Defendant's Motion for Leave to file a Third Party Complaint by email and U.S. mail on counsel for Defendants at the address listed below:

Jura C. Zibas
Lewis Brisbois Bisgaard & Smith LLP
199 Water Street, 25th Floor
New York, New York  10038

/s/
Matthew J. Oppenheim