# Exhibit "D"

# LEWIS BRISBOIS BISGAARD & SMITH LLP

ATTORNEYS AT LAW

199 WATER STREET, SUITE 2500, NEW YORK, NY 10038
PHONE: 212.232.1300 | FAX: 212.232.1399 | WEBSITE: www.lbbslaw.com



JURA C. ZIBAS
OF COUNSEL
DIRECT DIAL: 212.232.1353
E-MAIL: ZIBAS@lbbslaw.com

May 12, 2008

FILE NO.
27350.95

**VIA FIRST CLASS MAIL**

Matthew J. Oppenheim, Esq.
Oppenheim Group
7304 River Falls Drive
Potomac, MD 20854

Re: <u>Capital Records, Inc. v. City Hall Records, Inc., et al</u>

Dear Mr. Oppenheim:

As a follow up to our discussions regarding discovery produced thus far by Capitol Records, I have reviewed all documents you provided in an attempt to identify infringed tracks on each album as well as the chain of title. Unfortunately, I identified possibly three infringing tracks thus far out of the over 750 album titles. There were song titles listed in some of the agreements but I could not identify the corresponding album title on your list. This letter lists some questions I noted regarding each set of Artist agreements.

In addition, we have found case law that limits the application of New York common law only to New York and have not found the presumption that <u>Naxos</u> applies to all 50 states. Thus, we again reiterate our desire to settle this matter based solely on the sales in New York of allegedly infringing tracks.

Below I have summarized for each Artist wherein you provided documents the questions I have to begin identifying first the allegedly infringing tracks:

1. Ben Webster
Who is World Pacific and how are they related to Capitol Records?
What titles or tracks are on the master?
How does Ben Webster relate to Richard Groove Holmes?

---

ATLANTA | CHICAGO | FORT LAUDERDALE | LAFAYETTE | LAS VEGAS | LOS ANGELES | NEW ORLEANS | NEW YORK
ORANGE COUNTY | PHOENIX | SACRAMENTO | SAN BERNARDINO | SAN DIEGO | SAN FRANCISCO | TAMPA | TUCSON

4820-8009-9330.1

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew J. Oppenheim, Esq.
May 12, 2008
Page 2

2. Anita O'Day

Which of the masters are owned by Capitol?
Who owns the Anita O'Day and Stan Kenton master?
Which tracks are on the album titles of the infringing list?

3. Coleman Hawkins

What albums on the infringing list contain the sound records listed as masters owned in the May 25, 1956 agreement?
What are the names of the songs on the masters and to which albums do they correspond? There are 12 masters to be produced pursuant to the July 10, 1956 personal services contract.

4. Stan Kenton

Were contracts assigned? If so when and where is documentation?
There are numerous agreements but where is the list of recordings and masters and which correspond to allegedly infringing albums?

5. Woody Herman

What tracks exist and are they on the infringing albums list? There are masters recorded in Cuba, many selections mentioned in the agreements but no title names.

6. Frank Sinatra

There are supposedly 24 masters as mentioned in agreements but no name of tracks or titles.
What are the names of the tracks infringed and which albums contain these tracks?

7. Miles Davis

Where are documents related to Blue Note acquisition or relationship to Capitol?
What titles from the masters are on the albums?

8. June Christy

Selections were recorded for Capitol but no names of titles or tracks were identified.

9. Joe Maphis – Rose Lee Maphis

There were 8 masters mentioned in agreement, what are names of tracks?
What albums contain the tracks?

10. Fats Domino

How is Imperial Record Co. related to Capitol Records?

4820-8009-9330.1

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew J. Oppenheim, Esq.
May 12, 2008
Page 3

What are the names of the tracks and on which albums are they contained?

11.  Sam Hopkins

What is legal relationship to Aladdin Records and what was the effective date of an acquisition or other transition from Aladdin to Capitol?
Where in the agreements is transferred permitted from Aladdin to Capitol?
Which tracks are on the infringing album list?

12.  Dexter Gordon

Is he part of another artist group covered by ownership rights?
What tracks are on the infringing album list as no names of tracks provided in agreements?

13.  Peggy Lee

Many individual tracks and joint recordings are mentioned in agreements but which tracks are on which albums on the infringing list?

14.  Tennessee Ernie Ford

Agreements with some titles listed provided but what albums contain the titles?

15.  Landslide

There is one album on the infringing list but no identification of title in the agreement.

16.  Merle Travis

Many name of titles of masters owned by Capitol listed in agreements. Potentially identified one title on one album on the infringing list.

17.  Bud Powell

The agreements are not clear on ownership of the listed song titles.
What track is owned as Blue Note agreement does not discuss ownership?

18.  Theolonius Monk

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew J. Oppenheim, Esq.
May 12, 2008
Page 4

A list of titles are provided on agreement but not clear as to what albums on infringing list contain the title?
The agreement refers to recording but there is no mention of ownership. Where is documentation to show ownership of any titles or masters?

19.   Tex Ritter
Many titles recorded independently by Tex Ritter and jointly with other Artists are listed but what albums on the infringing list contain the titles?

20.   Les Paul- Mary Ford
No titles listed in agreements. What tracks are on the infringing albums?

21.   Mary Ford
What titles are owned by Capitol and what album contains these titles? Agreements have no titles.

22.   Les Paul
Many matrices and names of song titles listed in agreements but which ones are on the album infringing list?

23.   Nat King Cole
There are 24 albums on the list, many song titles both independently recorded and jointly with other Artists but which titles correspond to which album on the infringing list?

24.   Les Baxter
Many song titles provided in agreements, mostly jointly recorded with other Artists, but which titles are on which albums?

25.   Jo Stafford
Many song titles in agreements but only able to identify one potentially infringing title on one album on infringing album list.

26.   Dean Martin
There are 8 albums on the list but what are the tracks on these albums claimed to be infringing? The agreements are for joint recordings with other Artists but I did not find agreements related to the individual recordings by Dean Martin.

4820-8009-9330.1

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew J. Oppenheim, Esq.
May 12, 2008
Page 5


27.   Kay Starr
Several song titles are provided on agreement and one potentially infringing title can be identified for one album on infringing list.

28.   Husky Ferlin
The agreement has several titles but what tracks are on the album on the infringing list?

29.   Nellie Lutcher
Agreement for joint recording with Nat King Cole for 2 song titles.
What titles are on which album on infringing list?

30.   Yma Sumac
The agreement has about 8 song titles but which titles is on which album on the infringing list?

This is a brief overview of the questions I have found after reviewing the documents provided thus far by Capitol Records to identify ownership of the allegedly infringing albums. As you can see, many questions remain before we can proceed further with settlement discussions.

Your cooperation in providing clarification to these issues would be appreciated before we can consider further settlement discussions.

If you have any questions, feel free to contact me. I will be out of the office from May 13, 2008 through May 19, 2008.


                                        Very truly yours,

                                        *[signature]*
                                        Jura C. Zibas for
                                        LEWIS BRISBOIS BISGAARD & SMITH LLP


4820-8009-9330.1



# LEWIS BRISBOIS BISGAARD & SMITH LLP

ATTORNEYS AT LAW

199 WATER STREET, SUITE 2500, NEW YORK, NY 10038
PHONE: 212.232.1300 | FAX: 212.232.1399 | WEBSITE: www.lbbslaw.com

JURA C. ZIBAS
DIRECT DIAL: 212.232.1353
E-MAIL: ZIBAS@lbbslaw.com

July 3, 2008

FILE NO.
27350-95

**CONFIDENTIAL**

**VIA ELECTRONIC & REGULAR MAIL**

Matthew J. Oppenheim, Esq.
Oppenheim Group
7304 River Falls Drive
Potomac, MD 20854

Re:     *Capitol Records, Inc., v. City Hall Records, Inc., and Robin Cohn*
         Case No. 07 CV 6488 (LTS) (KNF)

Dear Mr. Oppenheim:

This will serve as a good faith effort to resolve outstanding issues and propose settlement negotiation considerations. Up to this time, Capitol Records, Inc. ("Capitol") has requested City Hall Records, Inc. ("City Hall") provide a new settlement dollar figure higher than the $300,000 offered. City Hall has attempted to calculate lost profits and potential lost damages based on the discovery provided in response to City Hall's demands. Based on the information provided by Capitol, City Hall cannot determine how Capitol has calculated the seven figure dollar demands without a great deal of guessing and Capitol has not been willing to provide an accounting and formulation showing how they derived the demand.

It is our goal that after reviewing this correspondence that Capitol will agree to negotiate based on the legal issues relevant to the case as well as the factual and other material issues upon which Capitol has evidence in its possession at the present time. We will first present legal arguments on key legal issues followed by material issues proposed in order to proceed to meaningful settlement negotiations.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 2

### Legal Issues

City Hall records continues to maintain that damages are to be paid for New York sales only. The claim under New York common law infringement relies on the *Naxos* case. The calculation of damages was not determined in that case. Under New York law, Capitol is entitled to New York damages only. The arguments in your May 30, 2008 letter are not persuasive as delineated below.

### Common law copyright infringement under New York law

A copyright infringement cause of action in New York consists of two elements: (1) the existence of a valid copyright; and (2) unauthorized reproduction of the work protected by the copyright. *Id.* at 368.

Capitol will have to prove its rights and City Hall is entitled to all such evidence during discovery prior to filing a motion for summary judgment. "In a suit under the copyright laws it is axiomatic that only the proprietor of the copyright has standing to sue for its infringement." *Bertolino v. Italian Line*, 414 F. Supp. 279 (S.D.N.Y. 1976). "[A]s the years pass, it becomes harder for a record producer to establish its rights in a pre-1972 recording due to the difficulty of finding and authenticating ownership records." 2 McCarthy on Trademarks and Unfair Competition § 10:64. Capitol bears the burden of showing chain of title. *U2 Home Entertainment, Inc. v. Kylin TV, Inc.*, 06-CV-02770 (DLI)(RLM), 2007 U.S. Dist. LEXIS 50131 (E.D.N.Y. July 10, 2007).

During initial settlement discussions, based on the good faith of Robin Cohn, City Hall provided a list of potentially infringing CDs, albums and cassettes. Capitol filed a Complaint and then an Amended Complaint with 51 titles but then appeared to rely on the list of over 200 CDs provided by City Hall during settlement discussions before increasing the list of alleged infringing titles to approximately 576 titles then 795 titles as of March 27, 2008 and more recently, adding 32 titles for a total of over 800 allegedly infringing titles. These titles date as far back as 1924 and clearly all recorded prior to 1972. Capitol will be required to prove ownership rights to each of these titles which total over 12,000.

### Damages Should be Limited to New York Injury

In your May 30, 2008, you cited the Single Publication Rule and its application as the precedent case law to follow in calculating damages. Our research regarding the lack of such legal authority is delineated below.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 3

*State Copyright Law Does Not Extend Beyond Its Borders*

The copyright damages should be limited to New York. Exclusive copyrights granted by a State are confined to its borders. *Goldstein v. California*, 412 U.S. 546 (1972); cf. *George W. Luft Co., Inc. v. Zande Cosmetic Co., Inc.*, 142 F.2d 536 (no theory existed under which a Capitol could recover damages for acts in the United States by a defendant doing business in New York resulting in a sale of merchandise in a foreign country under a mark to which the defendant had established a legal right of use in the foreign country). *Goldstein* stated that "a copyright granted by a particular State has effect only within its boundaries. If one State grants such protection, the interests of States which do not are not prejudiced since their citizens remain free to copy within their borders those works which may be protected elsewhere." 412 U.S. at 558. Accordingly, Capitol would not be able to recover multi-jurisdictional damages based on New York common law copyright. To collect damages for sales in other sates by a California corporation which would not be deemed infringing sales under the law in other states would be contrary to the principle articulated by the United States Supreme Court, that a state's common law copyright laws are restricted to that state's borders and citizens of other states would remain free to copy within their borders. In fact, *Naxos* concluded that "New York provides common law copyright protection to sound recordings not covered by the federal Copyright Act. . .*if the alleged act of infringement occurred in New York.*" 797 N.Y.S.2d 352 at 367 (N.Y. 2005) (emphasis added).

We have researched and Capitol has not provided the case law evidence of acceptance of common law copyright in 49 states beyond New York. In the alternative, under choice of law, Capitol can select based on their domicile which is New York, which would address only infringement that occurred in New York.

*Long Arm Statute Does Not Permit Damages Outside of New York*

In any event, long arm jurisdiction cannot provide a sufficient predicate for awarding damages for losses sustained outside of New York. Damages under long arm jurisdiction are limited to injuries resulting from activity in New York. *Comptoir de L'Industrie Textile de France v. Fiorucci, Inc.*, 78 Civ. 3923 (HFW), 1979 U.S. Dist. LEXIS 13022 (S.D.N.Y. 1979).

**Opposition to Arguments Raised in May 30, 2008 Letter to Support Theory of Damages in 50 States**

*Reliance on Illinois Caselaw*

In the May 30, 2008 letter sent to us opposing City Hall's arguments that damages should

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 4

be limited to New York, Capitol cited *Publications International, Ltd. v. Harris Publications*, No. 80 C 5258, 1981 U.S. Dist. LEXIS 14144 (N.D. Ill. April 30, 1981). *Harris Pubs.* was an action for unfair competition and trademark infringement. As in this case, the court exercised personal jurisdiction over corporate defendants although they maintained no corporate presence within the state, based on the fact that defendants sold and distributed magazines within the state, and were thus "transacting business" within the state. The court noted that "jurisdiction under the long arm statute, however, is limited to those causes of action arising out of tortious activity or transaction of business occurring in the state." *Harris Pubs.*, 1981 U.S. LEXIS 14144 at *7, citing *Mergenthaler Linotype Co. v. Leonard Storch Ent., Inc.*, 666 Ill. App. 3d 789 (1978) (limiting an injunction to shipment of goods to Illinois and holding that the long-arm statute did not give an Illinois court jurisdiction to enjoin a New York corporation from selling a product made exclusively in New York to someone in a state other than Illinois).

*Harris Pubs.* held that jurisdiction over out of state sales was supported by one of three theories:

> (1) as long as part of the cause of action arises out of in-state activity and the out-of-state activity involves the same tort and the same issues of fact and law, as well as the same defenses and there is no additional inconvenience in requiring the defendant to litigate the out-of-state claim, an Illinois court may adjudicate the entire controversy either under § 17(1)(a) or (b), i.e., the limitations of § 17(3) against joinder apply only to different causes of action arising from out-of-state activity;

> (2) the commission of the tort or the transaction of business that gave rise to this action occurred in Illinois, i.e., even with regards to the sales occurring in other states, the proximate cause of Capitols' injury was the publication of defendants' magazines in Illinois and Illinois was therefore the situs of the tort (thus, no joinder problem under § 17(3) is presented);

> (3) because the corporate defendants are "doing business" in the state [as opposed to merely transacting business] they are subject to the jurisdiction of Illinois courts on all causes of action notwithstanding the limitations of the long-arm act.

*Harris Pubs.*, 1981 U.S. Dist. LEXIS 14144 at *16.

None of the three theories enumerated in *Harris Pubs.* pursuant to which jurisdiction for the out-of-state sales would be appropriate can be satisfied in the present case because: (1) the out of state activity does not involve the same issues of law in that New York common law copyright is limited to infringement occurring in New York, *Goldstein v. California*, 412 U.S.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 5

546 (1972). *Capitol Records, Inc. v. Naxos*, 797 N.Y.S.2d 352 at 367 (N.Y. 2005), thus the copyright law of the other states would have to be considered when considering infringement occurring in other states, (2) the alleged tort giving rise to sales in other states did not occur in New York because, as distinguished from *Harris Pubs.*, the sound recordings were not manufactured in New York,[1] (3) and defendants are not doing business in New York.[2]

*Harris Pubs.* is not controlling law in New York and was based on Illinois law. As previously noted, under New York law, a damages award would be limited to damages suffered due to activity in New York. *Comptoir de L'Industrie Textile de France v. Fiorucci, Inc.*, 78 Civ. 3923 (HFW), 1979 U.S. Dist. LEXIS 13022 (S.D.N.Y. 1979). Moreover, under New York law, "the occurrence of financial consequences in New York due to the fortuitous location of plaintiff in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Darby Trading Inc. v. Shell Int'l Trading*, 07-CV-0400 (KMK)(GAY), 2008 U.S. Dist. LEXIS 25980 (S.D.N.Y. 2008) (injury in the form of lost sales or lost customers may constitute injury for long arm jurisdiction only if those lost sales or lost customers are within the New York market).

Capitol also cited *A&M Records, Inc. v. David L. Heilman*, 75 Cal. App. 3d 554 (Cal. Ct. App. 1977) to support the proposition of multi-jurisdictional damages. *A&M* held that a Plaintiff suing on the basis of unfair competition has the right to seek relief for unfair competition committed in all states. However, this case is not controlling in New York, particularly as *A&M* relied on California statute, Civ. Code § 3333 which provides that the measure of damages is "the amount which will compensate for all the detriment proximately caused thereby." The court in *A&M* provided no analysis of the statute's application to the facts at hand and was arguably overly broad, as the statute does not speak to jurisdictional complications. *A&M* also relied on *California Prune and Apricot Growers' Association v. H.R. Nicholson Company*, 69 Cal. App. 2d 207 (Ca. Ct. of App. 1945), which involved an order for an accounting of profits in states other than California. The court in *California Prune* specifically noted that the defendant had presented "no authority showing that the judgment should have been . . .limited" and did not actually resolve the issue as it was not ripe for resolution. As noted above, we have provided authority for the proposition that the damages should be limited to New York. Moreover, *A&M*

---

[1] Harris specifically noted that it was distinguishable from *Merganthaler* because "unlike the situation in *Merganthaler* where the allegedly infringing goods were manufactured in New York, and the only activity in Illinois was the sale, defendant's magazines were published in Illinois."

[2] General personal jurisdiction may be asserted over corporations "doing business" in New York under CPLR § 301. Capitol has not asserted jurisdiction under CPLR § 301.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 6

suggests that where the calculation of damages is based on copyright infringement, the calculation would be limited to sales within the state. *See* 75 Cal. App. 3d at 570.

### *Reliance on Single Publication Rule is Misguided*

In the May 30, 2008 letter, you cite *Nelson v. Working Class, Inc.*, 2000 U.S. Dist. Lexis 4848, at *8 (S.D.N.Y. 2000), and *Zoll v. Jordache Enterprises, Inc.*, 2001 U.S. Dist. 19983, at *9 n.1 (S.D.N.Y. 2001), discussing "the single publication rule" which permits Plaintiffs to recover multi-jurisdictional damages for violation of the right of publicity through one action brought in New York under New York law.

In *Nelson v. Working Class, Inc.*, defendants were an advertising agency that produced a television commercial in a multi million dollar advertising campaign using Plaintiffs' sound recording of the song "Leader of the Pack" without Plaintiffs' permission. Plaintiffs asserted, among other claims, a cause of action based on the common law right of publicity in each of the fifty states of the United States, claiming that they had "a right to assert a claim based on those violations of state laws other than New York or wherever the right of publicity for commercial exploitation is allowed and asserted."

The issue in *Nelson* was whether Plaintiffs could assert, in the New York action, right of publicity causes of action based on the law in each of the fifty states. The court determined that under the single publication rule only one cause of action could be asserted.

Based on choice of law rules, the court determined that New York law applied and that because New York law did not have a common law right of publicity, sections 50 and 51 of the Civil Rights Law of the State of New York applied instead. The court explained that based on the single publication rule adopted by New York, claims under California law and the laws of other states could not be asserted. Accordingly, the court dismissed the California law claims. The court further explained that:

> under the single publication rule, held applicable to claims asserting violations under sections 50 and 51 of the New York Civil Rights Law. . . only one cause of action can be maintained and the damages suffered in all jurisdictions can be recovered in the one action. The single publication rule 'was adopted in recognition of the vast multiplicity of suits which could arise from mass publications which transcend a variety of medias and state lines, and the attendant problems of choice of law, indefinite liability, and endless tolling of the statute of limitations.

*Nelson*, 2000 U.S. Dist. Lexis 4848, at *8.

4818-8219-2642.1

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 7

The court went on to rule that the cause of action was barred by New York's one year statute of limitations.

Because Capitol's claims in this case do not include claims for right of publicity, *Nelson* is not applicable to the claims asserted by Capitol. Notably, *Nelson* is silent as to whether the single publication rule would apply to copyright or trademark claims, or to non-mass media publications such as records, cds and tapes. Mass media includes books, newspapers, radio, televison, movies and the internet. *Firth v. New York*, 98 N.Y.2d 365 (N.Y. 2002).

In *Zoll v. Jordache Enterprises, Inc.*, a commercial in which Plaintiff appeared in 1978 was rebroadcast in 2000 without her consent. The issue was whether a Plaintiff could amend her complaint to assert right of publicity type claims under the law of each state in which the commercial was aired. The court denied Plaintiff's motion to amend her complaint to allege causes of action under the law of each state. The court determined the amendment was futile because in "New York, the single publication rule provides that a Plaintiff, asserting violations of *New York Civil Rights Law Sections 50 and 51*, may bring only one cause of action for a particular broadcast, though damages suffered in all jurisdictions may be recovered in that action." *Zoll* is not applicable to the claims asserted by Capitol since the case does not include claims for right of publicity. *Zoll* is silent as to whether the single publication rule would apply to copyright or trademark claims, or to non-mass media publications such as records, cds and tapes.

*Herbert Khaury v. Playboy Publications, Inc.*, 430 F.Supp. 1342 (S.D.N.Y. 1977) first adopted the single publication rule in the Southern District in the context of the right of publicity. *Khaury* based its decision on the Uniform Single Publication Act, 9C Uniform Law Annotated, which codified the single publication rule to address defamation and provides:

> § 1. No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the Plaintiff in all jurisdictions.

New York has applied the single publication rule in the limited contexts of defamation and right of publicity. The single publication rule "reduces the possibility of hardship to Plaintiffs by allowing the collection of all damages in one case commenced in a single

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 8

jurisdiction." *Firth v. New York*, 98 N.Y.2d 365 (N.Y. 2002). Although copyright infringement is considered a tort,[3] and trademark infringement is considered a tort,[4] the rule regarding the collection of damages suffered in all jurisdictions has not been applied in the context of common law copyright infringement or trademark infringement. The only copyright case that considered applying the single publication rule through "the analogy of mass media defamation" to broadcasting in the copyright context found that the analogy was "tempting, [but] unhelpful . . . and, in addition, raises more problems than it solves." *Davis v. E.I. DuPont de Nemours*, 249 F.Supp. 329 (S.D.N.Y. 1966). Moreover, there is no similar statute specifically authorizing the recovery of common law copyright infringement damages suffered by a plaintiff in all jurisdictions. The rule is aimed at torts arising out of a publication of mass communication. The complaint at issue does not allege any copyright infringement arising out of a publication of mass communication.

Plaintiffs cannot collect multi-state damages under *New York Civil Rights Law Sections 50 and 51*. In *Cuccioli v. Jekyll & Hyde Neue Metropol*, 00 civ. 1995 (LAK), 150 F.Supp.2d 566 (S.D.N.Y. 2001), the court noted that the single publication rule proposes that "a Plaintiff, as to any single publication, may bring only one action and may recover in that action "all damages suffered in all jurisdictions." However, *Cuccioli* concluded that "New York courts uniformly have held, the substantive law of New York is that one may recover for trade or commercial use of one's likeness only to the extent that the use occurs in New York." 150 F.Supp.2d 566 at 575, citing *Reilly v. Rapperswill Corp.*, 377 N.Y.S.2d 488 (N.Y. Sup. Ct. App. Div. 1975) (motion limited to defendant's activities in the State of New York).

**Proposed Facts and Assumptions**

Based on discovery provided to date by Capitol and investigation of public information by Defendants, Defendants propose the assumptions listed below for settlement negotiations with no emphasis or merit as to the order in which the assumptions and facts are listed.

1.   Capitol will delete all ACE UK titles and CDs from the list of alleged infringing CDs based on a separate letter addressed to Matthew Oppenheim as Capitol Music Group merged with Virgin Records America, Inc. which owns a specific catalogue of ACE UK and Capitol cannot

---

[3] *Davis v. Mary J. Blige*, 505 F.3d 90, 103 fn. 11 (2d Cir. 2007); *MCA, Inc. v. Earl Wilson, Jr.*, 677 F.2d 180 (1981); *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972); *Ted Browne Music Co. v. Fowler*, 290 F. 751, 754 (2d Cir. 1923).

[4] *Friars Nat'l Ass'n v. 9900 Santa Monica, Inc.*, 2005 U.S. Dist. LEXIS 7898; *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 218 (1st Cir. 1989).

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 9

hold Defendants liable for the conduct of a related company selling CDs outside of their agreement.

2.  Capitol has provided copies of agreements for approximately 88 artists out of the approximately 292 specified artists plus 150 various artists listed on the alleged infringing list. In a review of the agreements provided to date, approximately 729 specific titles are listed in the agreements. The argument raised by Capitol that the agreements do not have to list the specific titles is duly noted by Capitol has refused to provide the accounting documentation to show royalties paid for specific titles or any database information depicting clear ownership to the over 12,000 titles alleged in the list. Capitol has not provided organized information to show ownership in the 12,000 titles so Capitol does not possess such information for all titles in the CDs on the alleged infringing list.

3.  The language in all of the 88 artist agreements does not definitively include the CD format.

4.  The Dean Martin Family Trust agreement designates a five year term from 1998 for certain Masters. The list of Masters was not provided and extensions, if any, to the initial five year term were not provided. Capitol does not "own" all Masters as Warner Chappelle Music and other labels also own a large portion of Dean Martin's song library. Thus, Capitol cannot require that City Hall assume all Dean Martin titles are owned by Capitol or the parent company, EMI.

5.  City Hall acted in good faith when purchasing Ray Anthony titles on the Circle label recordings based on the Ray Anthony agreements produced as CHR-000023 to CHR-000035.

6.  City Hall assumed Koch Distribution owned the ASV label based on the January 7, 2008 cease and desist letter from Koch Distribution and acted in good faith resolving any disputes regarding ASV labels with Koch Distribution or suppliers of the ASV label. See CHR-000016 to CHR000017.

7.  City Hall purchased CDs from The Living Era Catalogue in good faith based on the letter from Sanctuary Records Group's cease and desist letter dated May 24, 2005 as City Hall would assume resolution of any issues related to CDs from The Living Era Catalogue were to be made with the company asserting its rights in a cease and desist letter. See CHR 001900 to 001901.

8.  City Hall purchased the Classics, Classics R&B and Body & Soul labels in good faith based on communications and indemnification from the vendor.

9.  Comet Records stated in a letter dated March 5, 2008 to City Hall that "Comet Records has full legal right and title to sell the compact discs to City Hall Records for distribution and sale by City Hall Records." Comet Records sells the labels Akarma and Universe. See CHR-000015.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 10

10. Dynaflow and Candid Productions have confirmed to Defendants that any titles they sold to Defendants are not owned by Capitol.

11. If City Hall pays damages for profits, City Hall is entitled to an apportionment for each CD if Capitol cannot definitively provide proof of ownership of each title. In discovery, Capitol has provided a list of 115 CDs which they claim 100% of ownership to the CD. Capitol has listed ACE UK CDs on this list which is not appropriate (refer to number 1 above). City Hall was not provided evidence of ownership to 100% of the titles on these 115 CDs. In addition, there is question as to evidence that the infringing songs were used as a lure or to foster publicity for the sound recordings.

12. The liner notes in the CDs which Capitol claims are confirmation of ownership of titles is not definitive evidence. First, many of the liner booklets are from the Proper label and City Hall is then entitled to cross examine the manufacturer of the liner booklets to find out the source of information. Second, a mention of Capitol does not confirm the duration of the title because as you know, different recordings of the same title are often different lengths and since we cannot compare the duration of the Capitol version to a statement in a CD cover, we will not agree that mention in liner notes is definitive evidence.

13. Pursuant to the November 30, 1990 Purchase and Sale Agreement between Ace Records LTd ("Ace") and Virgin Records America ("Virgin"), Virgin acquired the **"Modern Catalogue"** for distribution in North, Central and South America only. Annexed to the Ace/Virgin Agreement, and incorporated by reference was the November 16, 1990 Purchase and Sale Agreement between Duck Soup and Ace of the "Modern Records Catalogue". Exhibit 1.1.1 of the Duck Soup/Ace agreement sets forth the titles intended to comprise the "Modern Records Catalogue". That said, we are unable to verify a complete title list of the "Modern Catalogue" based on the documents provided.

Also provided was a document marked "Ace Master Records List" (CR 02451). This document was not annexed as an exhibit to either of the purchase and sale agreements referenced above. Instead, this document seems to have been prepared by Shelly Hogan at "Virgin Special Projects". The "Ace Master Records List" is undated. There is no way of knowing whether this documents purports to list all of the titles purchased by Virgin in 1990 or not, since the document does not identify the titles as being part of the "Modern Catalogue".

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 11

**Proposal**

City Hall is willing to negotiate the following proposed items as part of meaningful settlement discussions:

1. City Hall is willing to settle based on New York damages only pursuant to New York common law.

2. Capitol remove all ACE UK label from the alleged infringing list.

3. Capitol remove all ASV label from the alleged infringing list.

4. Capitol remove all Akarma, Universe, Body & Soul, Classics and Classics R&B from the alleged infringing list.

5. Capitol will provide all sales information including but not limited to sales price and attempts to sell the alleged infringing list or agree not to seek damages based on Capitol's estimated profits.

6. Settle for the entire 50 states based only on the profits of City Hall as provided to Capitol as of July 1, 2008 with only the actual cost of goods as overhead.

7. Capitol will provide all accounting information regarding titles owned by Capitol and ownership documentation of each title or limit the case to the 729 titles provided in the 88 agreements.

8. Capitol will not use a theoretical sales price to calculate alleged damages but actual Capitol price lists, not the Propermusic.com or Amazon.com information unless Capitol provides documentation of a legal relationship or agreement with these companies.

9. Capitol provide ownership of all titles on the 115 CDs it provided in response to discovery demands whereby they state 100% of the CDs is owned by Capitol.

10. Capitol agree to an estimated portion of titles to use as calculation of damages based on the limited discovery provided thus far.

11. Consider outside mediation through an organization such as JAMS.

If we do not receive a response from you within the next week, we will proceed to calculate damages based on our proposal and forward such offers to you accompanied by explanations as to our damage calculations.

4818-8219-2642.1

LEWIS BRISBOIS BISGAARD & SMITH LLP

Matthew Oppenheim
July 3, 2008
Page 12

                                            Very truly yours,

                                            /JZ/

                                            Jura C. Zibas for
                                            LEWIS BRISBOIS BISGAARD & SMITH LLP

4818-8219-2642.1