Exhibit "E"



# LEWIS BRISBOIS BISGAARD & SMITH LLP

ATTORNEYS AT LAW

199 WATER STREET, SUITE 2500, NEW YORK, NY 10038
PHONE: 212.232.1300 | FAX: 212.232.1399 | WEBSITE: www.lbbslaw.com

JURA C. ZIBAS                              July 23, 2008                    FILE NO.
DIRECT DIAL: 212.232.1353                                                  27350-95
E-MAIL: ZIBAS@lbbslaw.com

**HAND DELIVERY**
Honorable Kevin Nathaniel Fox
US Magistrate Judge Southern District
US Courthouse
500 Pearl Street, Room 530
New York, New York 10007



    Re:   *Capitol Records, Inc., v. City Hall Records, Inc., and Robin Cohn*
            <u>Case No. 07 CV 6488 (LTS) (KNF)</u>

Dear Magistrate Judge Fox:

    This firm represents City Hall Records, Inc. ("City Hall") and Robin Cohn (collectively, "Defendants") in the above-referenced action. We write to elucidate upon certain issues which Matthew J. Oppenheim has stated in his letter of today's date and to confirm that these issues cannot be resolved without further motions and/or a conference. As a preliminary matter, we note that while Defendants highlighted several outstanding discovery issues, in doing so Defendants do not waive their rights with respect to any other discovery matters that remain outstanding.

## I. Outstanding Discovery Requests

### A. Defendants' Discovery Requests

    *1. Chain of Title*

    As we previously noted, this is an action primarily focused on infringement of *common law* copyrights for pre-1972 sound recordings not protected by federal copyright law. As such we have requested from Plaintiff chain of title information for sound recordings alleged to have been infringed. Mr. Oppenheim purports to have produced copyright chain of title documents for over 60% of the 770 works it claims are at issue. However, we have prepared complete charts extracting the information from the documents produced by Plaintiff. The charts show

ATLANTA | CHICAGO | FORT LAUDERDALE | LAFAYETTE | LAS VEGAS | LOS ANGELES | NEW ORLEANS | NEW YORK
ORANGE COUNTY | PHOENIX | SACRAMENTO | SAN BERNARDINO | SAN DIEGO | SAN FRANCISCO | TAMPA | TUCSON

# LEWIS BRISBOIS BISGAARD & SMITH LLP

### ATTORNEYS AT LAW

199 WATER STREET, SUITE 2500, NEW YORK, NY 10038
PHONE: 212.232.1300 | FAX: 212.232.1399 | WEBSITE: www.lbbslaw.com

JURA C. ZIBAS
DIRECT DIAL: 212.232.1353
E-MAIL: ZIBAS@lbbslaw.com

July 23, 2008

FILE NO.
27350-95

**HAND DELIVERY**
Honorable Kevin Nathaniel Fox
US Magistrate Judge Southern District
US Courthouse
500 Pearl Street, Room 530
New York, New York 10007

Re:     *Capitol Records, Inc., v. City Hall Records, Inc., and Robin Cohn*
        Case No. 07 CV 6488 (LTS) (KNF)

Dear Magistrate Judge Fox:

This firm represents City Hall Records, Inc. ("City Hall") and Robin Cohn (collectively, "Defendants") in the above-referenced action. We write to elucidate upon certain issues which Matthew J. Oppenheim has stated in his letter of today's date and to confirm that these issues cannot be resolved without further motions and/or a conference. As a preliminary matter, we note that while Defendants highlighted several outstanding discovery issues, in doing so Defendants do not waive their rights with respect to any other discovery matters that remain outstanding.

**I. Outstanding Discovery Requests**

A. Defendants' Discovery Requests

*1. Chain of Title*

As we previously noted, this is an action primarily focused on infringement of *common law* copyrights for pre-1972 sound recordings not protected by federal copyright law. As such we have requested from Plaintiff chain of title information for sound recordings alleged to have been infringed. Mr. Oppenheim purports to have produced copyright chain of title documents for over 60% of the 770 works it claims are at issue. However, we have prepared complete charts extracting the information from the documents produced by Plaintiff. The charts show

ATLANTA | CHICAGO | FORT LAUDERDALE | LAFAYETTE | LAS VEGAS | LOS ANGELES | NEW ORLEANS | NEW YORK
ORANGE COUNTY | PHOENIX | SACRAMENTO | SAN BERNARDINO | SAN DIEGO | SAN FRANCISCO | TAMPA | TUCSON

LEWIS BRISBOIS BISGAARD & SMITH LLP

Honorable Kevin Nathaniel Fox
July 23, 2008
Page 2

that Plaintiff's statement that he has provided over 60% of the requested chain of title documentation is misleading as Plaintiff has provided information for approximately 15 % to 20% of the infringing CDs lists based on the information we have been provided to date. We are happy to provide these charts to the Court for its review.

We previously noted that with the exception of providing artist agreements listing approximately 729 song titles, Plaintiff has failed to identify specific titles in over 795 Compact Discs (based on Plaintiff's letter, we are not now clear of which lists to use as infringing titles since many lists were produced and Plaintiff referenced different lists with numbers in his letter when we have repeatedly requested one list) that are claimed to be infringing and has failed to provide proof of Capitol's ownership or exclusive distribution rights as to many of the song titles and Compact Discs. Plaintiff now contends that Defendants are "intentionally misleading and disingenuous" because Defendants pointed out that Plaintiff has produced nothing more than artist agreements listing 729 song titles. Plaintiff contends that Defendants are "intentionally misleading and disingenuous" because they should know that artist agreements do not generally list song titles. It is Plaintiff who is intentionally trying to evade the true issue at hand. Defendants are not contending that the artist agreements must list song titles. Defendants' request was not limited to artist agreements. As Plaintiff knows, other types of written agreements concerning the ownership and royalty breakdown for each song title exist, otherwise, Plaintiff could never collect or pay royalties as required. Plaintiff should have all of this information on a database in order to properly conduct its business.

It has now become apparent to Defendants that Plaintiff has attempted to show chain of title and ownership to sound tracks on the albums sold by Defendants by producing discographies of albums sold by the third parties that is has downloaded from web pages of such third parties (See attached produced by Plaintiff as what we believe is to show ownership of soundtracks). Upon downloading the discographies of albums sold by these third parties, Plaintiff attempts to cross-reference artist agreements based on listed contract dates in the agreements with the discographies of the third parties. However, these third party discographies are not responsive to Defendants' discovery requests as this information is not sufficient to show chain of title and we cannot confirm if these actual albums were sold by Defendants.

In connection with the foregoing dispute, we respectfully request permission to file a Motion to Appoint a Special Master to review the chain of title documentation for each soundtrack identified by Plaintiff as infringing. This should assist in eliminating any further questions of what is considered a chain of title or proof of ownership of a copyright.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Honorable Kevin Nathaniel Fox
July 23, 2008
Page 3


### 2. Comprehensive List of Titles of Sound recordings Infringed

Plaintiff claims that it is compiling a list 10,000 tracks of allegedly infringing soundtracks by September 30, 2008. However, Defendants will be prejudiced if they have to wait until September 30, 2008 because discovery closes within a month thereafter not allowing time for further discovery or damages discovery. This list must be produced immediately.

### 3. Comprehensive List of Dates on Which Sound Recordings Were Fixed

Plaintiff states that it cannot provide a list of the dates on which each of the sound recordings at issue was recorded until the list of titles is finalized. Plaintiff claims that because Defendants have the liner notes, the information requested is in Defendants' possession. However, the liner notes are created by third parties who must authenticate the accuracy of the information contained therein regarding information known to Capitol. This liner note to which Plaintiff refers is hearsay. Plaintiff must know what it owns and what is being infringed. It will prejudice Defendants if the information continues to be withheld by Plaintiff.

### 4. Information Regarding Plaintiff's Manufacturing and Sale of Infringing Tracks

Plaintiff argues that it is burdensome to compile manufacturing and sale information regarding 50 years of exploitation of thousands of sound recordings. However, if Plaintiff did not want to be burdened by discovery requests, it should not have brought a suit for thousands of sound recordings (which it cannot even identify) that are 50 years old. Plaintiff also argues that the request is not relevant. Though relevance is not a proper objection at discovery, the request is relevant because Defendants have to prepare a defense as to damages. If Plaintiff has never tried to manufacture, release or sell the albums, those facts are relevant to the issue of Plaintiff's damages. Moreover, Plaintiff's current catalog does not include all of the titles it claims may be infringed.

### 5. Sales Information

Plaintiff admits that it does not sell the albums listed in the amended complaint, and as such, cannot provide sales information. However, if Plaintiff does not sell or attempt to sell the titles, this affects damage calculations so any sales, which includes selling as an exclusive distributor, must be produced.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Honorable Kevin Nathaniel Fox
July 23, 2008
Page 4

### 6. Royalty Information

Plaintiff has objected to a request for royalty information as irrelevant. However, Royalty information provides relevant information regarding the list of song titles infringed and damages since profits which are calculated with deductions of costs such as royalties.

### 7. Suits Against Third Parties

Public records do not indicate many lawsuits were filed but based on Plaintiff's assertion of infringement, Defendants are looking to all sources to obtain ownership information. Moreover, this information is relevant to Defendants' laches, abandonment and other defenses.

### 8. Licensing Information

Licensing information will aid in proving chain of title for those titles Plaintiff claims it owns. Plaintiff's objection that the licensing is not for the infringing albums themselves is confusing as Plaintiff claims it does not own the infringing albums. Clearly, it is not the albums themselves that are at issue, rather the allegedly infringing tracks on the albums. Accordingly, Defendants are entitled to Plaintiff's licensing information with regard to the tracks.

## B. Plaintiff's Discovery Requests

### 1. Copies of Infringing Albums, Cover Art, Album Covers and Liner Notes

Defendants have approximately 220 liner notes in its possession. Defendants have provided all but seventy of the liner notes in its possession because these liner notes are still being copied. City Hall is a small company that does not maintain copies of everything it has sold in the past.

### 2. City Hall Inventory of Infringing Albums

Because much of the inventory is based on items that were recalled from customers in connection with this lawsuit, the final inventory number has not been finalized as customers continue to inquire about returns on a rolling basis. The list will be produced.

### 3. Catalogs and Promotional Materials

As explained to Plaintiff repeatedly during discovery, City Hall does not have specific, fixed price terms. The prices vary. All information related to any sales pricing was provided to Plaintiff.

4819-5002-5474.1

LEWIS BRISBOIS BISGAARD & SMITH LLP

Honorable Kevin Nathaniel Fox
July 23, 2008
Page 5

### 4. Plaintiff Seeks Leave to Issue additional Interrogatories

Defendants object because Plaintiff is misleading the Court about the expansion of the list of albums. As noted above, the Amended Complaint was limited to 51 album titles.

## II. <u>Defendants' Request for a Protective Order</u>

### A. Identification of Infringing and Infringed Works at Issue

Plaintiff states that it initially requested copies of 653 albums, their cover art, album covers and liner notes on February 21, 2008, that on March 12, 2008 it sought information regarding an additional 57 albums and on June 27, 2008 it sought the information regarding 64 additional albums. However, Plaintiff disingenuously neglects to point out that the Amended Complaint listed only 51 albums and that the list has continued to increase after the filing of the amended complaint.

Plaintiff argues that because plaintiffs in other well known mass infringement cases have asserted their claims based on a list of exemplary copyrighted works, Plaintiff's sample list should suffice in the case at bar. However, if the issue of whether plaintiffs had properly asserted copyright claims based on exemplary lists was never raised by defendants in the cases cited by Plaintiff, this would not preclude defendants from raising the deficiency in the present case. As noted in our previous letter, Plaintiff must identify the infringing and infringed works at issue in the Complaint. See *Andrea Plunket v. Estate of Dame Jean Conan Doyle*, 99 Civ. 11006 (KMW), 2001 U.S. Dist. LEXIS 2001 (S.D.N.Y. 2001) ("the Court finds that plaintiff fails to specify which works are at issue in this case. Plaintiff provides a multi-page schedule but contends that her copyright claims are not limited to these works. As a result, plaintiff has not provided a list of the works potentially at issue in this case and thus fails to meet the first *Kelly* requirement. The Court notes that this technical flaw in the pleadings may be remedied in the Amended Complaint"); see also *Sharp v. Patterson*, 03 Civ. 8772 (GEL), 2004 U.S. Dist. LEXIS 22311 (S.D.N.Y. 2004) ("the obligation to identify the infringing and infringed works is not satisfied by alleging a mass infringement of 69 different copyright letters by five different novels").

Plaintiff cites *Capitol Records, Inc. v. Wings Digital Corp.*, 218 F.Supp. 2d 280, 284 (S.D.N.Y. 2002) to support the position that its failure to identify the copyrighted sound recordings at issue and its use of expansive lists of albums that may or may not contain infringing sound recordings is appropriate. However, the Court in *Wings* merely held that plaintiff was not required to "state with particularity the specific infringing acts or the times of such acts." We are not asking Plaintiff to identify each specific infringing act or times of such

LEWIS BRISBOIS BISGAARD & SMITH LLP

Honorable Kevin Nathaniel Fox
July 23, 2008
Page 6

act. We are asking Plaintiff to specify the copyright works at issue in this lawsuit for which they can show copyright ownership and to limit discovery to those albums that have previously been specifically identified. Plaintiff also cites to *S.W.B. New England, Inc. v. R.A.B. Food Group, LLC*, No. 06-15357, 2007 U.S. Dist. Lexis 43401 (S.D.N.Y. June 13, 2007). However, *S.W.B. New England* is an employment discrimination case that generally addresses the notice pleading standard, and makes no mention of whether the copyrights at issue need to be identified in a complaint. *Great American Fun Corp. v. Hosung New York Trading, Inc.*, 935 F. Supp. 488 (S.D.N.Y. 1996), also cited by Plaintiff, is distinguishable because Plaintiff in that case had identified which copyrights were at issue. Plaintiff in *Great American Fun* was merely not required to identify which of defendants' works were not infringing. We are not asking Plaintiff to delineate which of Defendants' records are not infringing. We are merely asking that Plaintiff identify what it can show evidence of ownership to, and that it not infinitely expand the list of albums which may or may not contain infringing titles to an unwieldy number, particularly as it has no evidentiary basis to do so. Although *Tin Pan Apple, Inc. v. Miler Brewing Co., Inc.*, 737 F.Supp. 826, 828 (S.D.N.Y. 1990) held that "the precise meaning of one or more" may be explored on discovery," *Tin Pan Apple* involved facts limited to *one* infringing commercial, and involved a potential universe of infringed material that was much more limited than what we have in the instant case. At bar, is not a question over the precise meaning of one or more, but the precise meaning of one or infinitum. Accordingly, we respectfully request that the Court permit us to file a request for a protective order limiting discovery to the Albums that have been specifically identified in the Amended Complaint.

B. Damages Outside of New York

Plaintiff argues that because it has its principal place of business in New York and has alleged harm in New York, it is entitled to recovery for damages outside of New York. Our research regarding the lack of such legal authority is delineated below.

The copyright damages should be limited to New York because exclusive copyrights granted by a State are confined to its borders. *Goldstein v. California*, 412 U.S. 546 (1972). *Goldstein* stated that "a copyright granted by a particular State has effect only within its boundaries. If one State grants such protection, the interests of States which do not are not prejudiced since their citizens remain free to copy within their borders those works which may be protected elsewhere." 412 U.S. at 558. Accordingly, Capitol would not be able to recover multi-jurisdictional damages based on New York common law copyright. In any event, long arm jurisdiction cannot provide a sufficient predicate for awarding damages for losses sustained outside of New York. Damages under long arm jurisdiction are limited to injuries resulting from activity in New York. *Comptoir de L'Industrie Textile de France v. Fiorucci, Inc.*, 78 Civ. 3923 (HFW), 1979 U.S. Dist. LEXIS 13022 (S.D.N.Y. 1979).

LEWIS BRISBOIS BISGAARD & SMITH LLP

Honorable Kevin Nathaniel Fox
July 23, 2008
Page 7

Plaintiff cited *Publications International, Ltd. v. Harris Publications*, No. 80 C 5258, 1981 U.S. Dist. LEXIS 14144 (N.D. Ill. April 30, 1981). However, *Harris Pubs.* is not controlling law in New York and was based on Illinois law. Moreover, none of the three theories enumerated in *Harris Pubs.* pursuant to which jurisdiction for the out-of-state sales would be appropriate can be satisfied in the present case because: (1) the out of state activity does not involve the same issues of law in that New York common law copyright is limited to infringement occurring in New York, *Goldstein v. California*, 412 U.S. 546 (1972). *Capitol Records, Inc. v. Naxos*, 797 N.Y.S.2d 352 at 367 (N.Y. 2005), thus the copyright law of the other states would have to be considered when considering infringement occurring in other states, (2) the alleged tort giving rise to sales in other states did not occur in New York because, as distinguished from *Harris Pubs.*, the sound recordings were not manufactured in New York, (3) and defendants are not doing business in New York. Lastly, under New York law, unlike Illinois law, "the occurrence of financial consequences in New York due to the fortuitous location of plaintiff in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Darby Trading Inc. v. Shell Int'l Trading*, 07-CV-0400 (KMK)(GAY), 2008 U.S. Dist. LEXIS 25980 (S.D.N.Y. 2008) (injury in the form of lost sales or lost customers may constitute injury for long arm jurisdiction only if those lost sales or lost customers are within the New York market).

Capitol also cited *A&M Records, Inc. v. David L. Heilman*, 75 Cal. App. 3d 554 (Cal. Ct. App. 1977) to support the proposition of multi-jurisdictional damages. *A&M* held that a plaintiff suing on the basis of unfair competition has the right to seek relief for unfair competition committed in all states. However, this case is not controlling in New York, particularly as *A&M* relied on California statute, Civ. Code § 3333 which provides that the measure of damages is "the amount which will compensate for all the detriment proximately caused thereby." Moreover, *A&M* suggests that where the calculation of damages is based on copyright infringement, the calculation would be limited to sales within the state. *See* 75 Cal. App. 3d at 570.

Plaintiff cited *Nelson v. Working Class, Inc.*, 2000 U.S. Dist. Lexis 4848, at *8 (S.D.N.Y. 2000), *Zoll v. Jordache Enterprises, Inc.*, 2001 U.S. Dist. 19983, at *9 n.1 (S.D.N.Y. 2001), and *Herbert Khaury v. Playboy Publications, Inc.*, 430 F.Supp. 1342 (S.D.N.Y. 1977) discussing "the single publication rule" which permits Plaintiffs to recover multi-jurisdictional damages for violation of the right of publicity through one action brought in New York under New York law. However, the single publication rule does not apply to the case at bar. New York has applied the single publication rule in the limited contexts of defamation and right of publicity. The rule regarding the collection of damages suffered in all jurisdictions has not been applied in the context of copyright or trademark infringement. The only copyright case that considered

LEWIS BRISBOIS BISGAARD & SMITH LLP

Honorable Kevin Nathaniel Fox
July 23, 2008
Page 8

applying the single publication rule through "the analogy of mass media defamation" to broadcasting in the copyright context found that the analogy was "tempting, [but] unhelpful . . . and, in addition, raises more problems than it solves." *Davis v. E.I. DuPont de Nemours*, 249 F.Supp. 329 (S.D.N.Y. 1966). The rule is aimed at torts arising out of a publication of mass communication. The complaint at issue does not allege any copyright infringement arising out of a publication of mass communication.

Very truly yours,

Jura C. Zibas and
Joanne Romero for
LEWIS BRISBOIS BISGAARD & SMITH LLP

Enclosures

cc:     Via Facsimile/w encls.
        Matthew J. Oppenheim, Esq.
        The Oppenheim Group
        7304 River Falls Drive
        Potomac, MD 20854

Big Ben                                                                    Page 1 of 2

 propermusic.com     PROPER music.com

Search    GO    **Home**   **Contact**   **About Us**   **Latest Releases**    **View Shopping Cart**

#### Proper Products
Proper Box sets
Proper Pairs
Proper Intro Series
Proper Premier
Proper Refuge
Retro Gold Collection

#### Search
| CHRISTMAS |
| HUMOUR |
| GOSPEL |
| SOUL DANCE RAP |
| JAZZ |
| COUNTRY |
| BLUES |
| FOLK |
| SOUNDTRACK |
| WORLD |
| EASY LISTENING |
| REGGAE |
| CLASSICAL |
| ROCK and POP |

Subscribe
to receive by email the latest
release information

**JAZZ**

Ben Webster
Big Ben



DISCOGRAPHY   TRACK LISTINGS   REVIEW

£10.99

BUY

1

Ben Webster's development into one of the undisputed masters of the tenor saxophone is depicted in this box set. From his early days with the bands of Blanche Calloway, Bennie Moten, Teddy Wilson and others to the full blossoming of his talents with Duke Ellington and the small bands on 52nd Street. This is music full of passion, intensity and great beauty. 94 tracks are included along with a 48 page booklet containing rare photographs, the full story and discography. THIS CD SET IS NOW IN SHORT SUPPLY AND WILL BE DISCONTINUED WHEN CURRENT STOCK HAS BEEN EXHAUSTED.

CR 02430

CONFIDENTIAL

# Discography

**DISC ONE - COTTON TAIL**

Blanche Calloway and her Joy Boys : Joe Keyes, Edgar Battle, Clarence Smith, tp; Alton Moore, Herb Alvis, tb; Booker Pittman, cl, as; Leroy Hardy, as; Ben Webster, ts; Clyde Hart, p; Andy Jackson, bj, g; Joe Durham, brass bass; Cozy Cole, d; Blanche Calloway, voc.
Camden, N.J., June 11, 1931.

68235-1 WITHOUT THAT GAL (Arr. Edgar Battle) Victor 22733

Bennie Moten's Kansas City Orchestra : Bennie Moten, ldr; "Hot Lips" Page, Joe Keyes, Dee Stewart, tp; Dan Minor, vib; Eddie Durham, tb, g, arr; Eddie Barefield, cl, as; Jack Washington, as, bs; Ben Webster, ts; Count Basie, p; Leroy Berry, g; Walter Page, b; Willie McWashington, ad.
Camden, N.J., December 13, 1932.

74846-1 TOBY Victor 23384
74848-1 THE BLUE ROOM Victor 24381

Fletcher Henderson and his Orchestra : Russell Smith, Irving Randolph, Henry "Red" Allen, tp; Claude Jones, Keg Johnson, tb; Buster Bailey, cl; Russell Procope, Hilton Jefferson, as; Ben Webster, ts; Horace Henderson, p; Lawrence Lucie, g; Elmer James, b; Walter Johnson, d.
New York, September 11, 1934.

38601-B HAPPY AS THE DAY IS LONG (Arr. Benny Carter) Decca 214

Same personnel as above, but add Benny Carter, as; Fletcher Henderson, p, replaces Horace Henderson.
New York, September 25, 1934.

38725-A HOTTER THAN 'ELL (Arr. Horace Henderson) Decca 555

Benny Carter and his Orchestra : Russell Smith, Otis Johnson, Irving Randolph, tp; Benny Moten, Keg Johnson, tb; Benny Carter, cl, as; Ben Smith, Russell Procope, as; Ben Webster, ts; Teddy Wilson, p; Clarence Holiday, g; Elmer James, b; Walter Johnson, d.
New York, December 13, 1934.

16413-1 DREAM LULLABY (Arr. Benny Carter) Vocalion 2898
16414-1 EVERYBODY SHUFFLE (Arr. Benny Carter) Vocalion 2870

Bob Howard and his Orchestra : Benny Carter, tp, as; Ben Webster, ts; Teddy Wilson, p; Clarence Holiday, g; Elmer James, b; Cozy Cole, d; Bob Howard, voc.
New York, February 25, 1935.

39387-A THE GHOST OF DINAH Decca 400

Willie Bryant and his Orchestra : Benny Carter, Bobby Cheek, Richard Clark, Edgar Battle, tp; John Haughton, Robert Horton, Eddie Durham, tb; Glynn Paque, cl, as; Stanley Payne, as; Johnny Russell, Ben Webster, ts; Teddy Wilson, p; Arnold Adams, g; Louis Thompson, b; Cozy Cole, d; Willie Bryant, ldr.
New York, May 8, 1935.

89817-1 RIGAMAROLE (Arr. Benny Carter) Victor 25038

Teddy Wilson and his Orchestra : Roy Eldridge, tp; Benny Goodman, cl; Ben Webster, ts; Teddy Wilson, p; John Trueheart, g; John Kirby, b; Cozy Cole, d; Billie Holiday, voc.
New York, July 2, 1935.

17767-1 WHAT A LITTLE MOONLIGHT CAN DO Brunswick 7498
17769-1 A SUNBONNET BLUE Brunswick 7498

CR 02431

CONFIDENTIAL

Willie Bryant and his Orchestra : Otis Johnson, Richard Clark, Edgar Battle, tp; John Haughton, Robert Horton, George Matthews, tb; Glynn Paque, cl, as; Stanley Payne, as; Johnny Russell, Ben Webster, ts; Roger "Ram" Ramirez, p; Arnold Adams, g; Ernest Hill, b; Cozy Cole, d; Willie Bryant, voc. ldr.
New York, August 1, 1935.

92908-1 THE VOICE OF OLD MAN RIVER (Arr. Teddy Wilson) Victor 25129

Duke Ellington and his Famous Orchestra : Rex Stewart, cnt; Cootie Williams, Arthur Whetsol, tp; Joe Nanton, Lawrence Brown, Juan Tizol, tb; Barney Bigard, cl, ts; Johnny Hodges, Otto Hardwick, ss, as; Ben Webster, ts; Harry Carney, bs; Duke Ellington, arr, p; Fred Guy, g; Hayes Alvis, b; Sonny Greer, d; Ivie Anderson, voc.
New York, August 19, 1935.

B 177975-1 TRUCKIN' Brunswick 7514

Duke Ellington and his Orchestra : Rex Stewart, cnt; Cootie Williams, Arthur Whetsol, tp; Joe Nanton, Lawrence Brown, Juan Tizol, tb; Barney Bigard, cl; Johnny Hodges, cl, ss, as; Otto Hardwick, as, bass, sax; Ben Webster, ts; Harry Carney, bs, cl, as; Duke Ellington, arr, p; Fred Guy, g; Billy Taylor, b; Sonny Greer, d.
New York, July 29, 1936.

B 19626-1 IN A JAM Brunswick 7734

Cab Calloway and his Orchestra : Shad Collins, Irving Randolph, Lammar Wright, tp; Claude Jones, Keg Johnson, De Priest Wheeler, tb; Garvin Bushell, Andrew Brown, cl, as; Ben Webster, Walter Thomas, ts; Bennie Payne, p; Morris White, g; Milt Hinton, b; Leroy Maxey, d; Cab Calloway, voc, ldr.
New York, September 15, 1936.

19877-1 THE WEDDING OF MR AND MRS SWING Brunswick 7758

Teddy Wilson and his Orchestra : Irving Randolph, tp; Vido Musso, cl; Ben Webster, ts; Teddy Wilson, p; Allen Reuss, g; Milt Hinton, b; Gene Krupa, d; Billie Holiday, voc.
New York, October 21, 1936.

20105-1 EASY TO LOVE Brunswick 7762

Teddy Wilson and his Orchestra : Irving Randolph, tp; Vido Musso, cl; Ben Webster, ts; Teddy Wilson, p; Allen Reuss, g; John Kirby, b; Cozy Cole, d.
New York, December 16, 1936.

20413-4 I'LL SEE YOU IN MY DREAMS Brunswick 7816

Fletcher Henderson and his Orchestra : Russell Smith, Dick Vance, Emmett Berry, tp; Albert Wynn, "Rock" McConnell, tb; Jerry Blake, cl, as; Hilton Jefferson, as; Ben Webster, Elmer Williams, ts; Fletcher Henderson, p; Lawrence Lucie, g; Israel Crosby, b; Pete Suggs, d.
New York, October 25, 1937.

21941-1 SING YOU SINNERS (Arr; Fletcher Henderson) Vocalion 4125

Lionel Hampton and his Orchestra : Dizzy Gillespie, tp; Benny Carter, as, arr; Coleman Hawkins, Chu Berry, Ben Webster, ts; Clyde Hart, p; Charlie Christian, g; Milt Hinton, b; Cozy Cole, d; Lionel Hampton, vib.
New York, September 11, 1939.

041409-1 EARLY SESSION HOP Victor 26393

Teddy Wilson and his Orchestra : Karl George, Doc Cheatham, Harold "Shorty" Baker, tp; Floyd Brady, tb; Pete Clark, cl, as, bs; Rudy Powell, cl, as; Ben Webster, George Irish, ts; Teddy Wilson, p; Al Casey, g; Al Hall, b; J.C. Heard, d.
New York, January 18, 1940.

26438-A 71 (Arr. Ben Webster) Columbia 35737

CR 02432

CONFIDENTIAL

Untitled Document

Duke Ellington and his Famous Orchestra : Rex Stewart, cnt; Cootie Williams, Wallace Jones, tp; Joe Nanton, Lawrence Brown, Juan Tizol, tb; Barney Bigard, cl, ts; Johnny Hodges, ss, as; Otto Hardwick, ss, bass sax; Ben Webster, ts; Harry Carney, bs, cl, as; Duke Ellington, p; Fred Guy, g; Jimmy Blanton, b; Sonny Greer, d; Ivie Anderson, voc.
New York, February 14, 1940.

WM 1135-A SOLITUDE Columbia 35227

Same personnel as above, but Ivie Anderson out.
Chicago, March 15, 1940.

049015-1 CONGO BRAVA Victor 26577

Same personnel as above.
Hollywood, May 4, 1940.

049655-1 COTTON TAIL Victor 26610

Same personnel as above.
Chicago, May 28, 1940.

053021-1 BOJANGLES (A portrait of Bill Robinson) Victor 26644

**DISC TWO - ALL TOO SOON**

Duke Ellington and his Famous Orchestra :

Same personnel as "Bojangles".
New York, July 22, 1940.

054608-1 ALL TOO SOON Victor 27247

Same personnel as above.
New York, July 24, 1940.

054625-1 SEPIA PANORAMA Victor 26731

Same personnel as above.
Chicago, October 28, 1940.

053580-1 CHLOE (SONG OF THE SWAMP) Victor 27235

Rex Stewart and his Orchestra : Rex Stewart, cnt; Lawrence Brown, tb; Ben Webster, ts; Harry Carney, bs, as; Billy Strayhorn, p; Jimmy Blanton, b; Sonny Greer, d.
Chicago, November 2, 1940.

053610-2 LINGER AWHILE Bluebird B11057

Duke Ellington and his Orchestra : Same personnel as "Chloe", but Ray Nance, tp replaces Cootie Williams. "Crystal Ballroom", Lake Inn, Fargo, North Dakota.
November 7, 1940.

STARDUST Palm Club 30:11

Barney Bigard and his Orchestra : Ray Nance, tp; Juan Tizol, tb; Barney Bigard, cl; Ben Webster, ts; Harry Carney, bs; Duke Ellington, p; Jimmy Blanton, b; Sonny Greer, d.
Chicago, November 11, 1940.

053622-1 LAMENT FOR JAVANETTE Bluebird B 11098

CR 02433

CONFIDENTIAL

Untitled Document

Page 4 of 7

Jack Teagarden's Big Eight : Rex Stewart, cnt; Jack Teagarden, tb, voc; Barney Bigard, cl; Ben Webster, ts; Billy Kyle, p; Brick Fleagle, g; Billy Taylor, b; Dave Tough, d.
New York, December 15, 1940.


3414 ST. JAMES INFIRMARY HRS 2006
3415 THE WORLD IS WAITING FOR THE SUNRISE HRS 2007
3416 BIG EIGHT BLUES HRS 2007
3417 SHINE HRS 2006


Duke Ellington and his Famous Orchestra :

Same personnel as "Stardust".
Hollywood, February 15, 1941.


055286-1 BLUE SERGE Victor 27356


Same personnel as above.
Hollywood, June 5, 1941.


061285-1 JUST A SETTIN' AND A ROCKIN' Victor 27587


Same personnel as above.
Hollywood, September 29, 1941.


061604-1 FIVE O'CLOCK DRAG Victor 27700


Same personnel as above, but Billy Strayhorn, p, replaces Duke Ellington; Junior Raglin, b, replaces Jimmy Blanton.
Hollywood, December 2, 1941.


061687-2 CHELSEA BRIDGE Victor 27740


Same personnel as above, but Duke Ellington, p, replaces Billy Strayhorn.
Chicago, January 21, 1942.


070682-1 PERDIDO Victor 27880
070683-1 THE "C" JAM BLUES Victor 27856


Slim Gaillard and his Flat Foot Floogie Boys : Ben Webster, ts; Jimmy Rowles, p; Slim Gaillard, g, voc; Leo Watson, d.
Hollywood, April 4, 1942.


H-788-1 PALM SPRINGS JUMP Columbia CJ 33566
H-789-1 RA-DA-DA-DA Meritt 10
H-790-1 GROOVE JUICE SPECIAL Meritt 10


Duke Ellington and his Famous Orchestra :

Same personnel as January 21, 1942.
Hollywood, June 26, 1942.


072438-1 MAIN STEM Victor LPM 1364


Ben Webster Quintet : Hot Lips Page, tp; Ben Webster, ts; Clyde Hart, p; Charlie Drayton, b; Denzil Best, d.
New York, September 1943.


N 1633-3 WOKE UP CLIPPED Circle CLP 42
N 1634-5 TEEZOL Circle CLP 42
N 1635-2 'NUFF SAID Circle CLP 41

CR 02434

CONFIDENTIAL

DISC THREE - 52nd STREET DAYS

Untitled Document

Ben Webster Quintet : Same personnel and date as "Nuff Said".

N 1636-2 THE HORN Circle CLP 41
N 1637-2 DIRTY DEAL Circle CLP 41
N 1638-3 DON'T BLAME ME Circle CLP 41
N 1639-1 I SURRENDER DEAR Circle CLP 41
N 1640-5 TEA FOR TWO Circle CLP 41

Woody Herman and his Orchestra : Cappy Lewis, Bob Guyer, Ray Wetzel, Ben Stabler, Nick Travis, tp; Eddie Bert, Al Mastren, Ed Kiefer, tb; Woody Herman, cl, voc; Johnny Bothwell, Chuck Di Maggio, as; Allen Eager, Pete Mondello, Ben Webster, ts; Skippy De Sair, bs; Ralph Burns, p; Hy White, g; Chubby Jackson, b; Cliff Leeman, b.
New York, January 8, 1944.

71626 NOAH Coral EC 81015
71630 CRYIN' SANDS Decca DL 792229

James P. Johnson's Blue Note Jazzmen : Sidney de Paris, tp; Vic Dickenson, tb; Ben Webster, ts; James P. Johnson, p; Jimmy Shirley, g; John Simmons, b; Sid Catlett, d.
New York, March 4, 1944.

951-3 VICTORY STRIDE Blue Note 32
953-2 AFTER YOU'VE GONE Blue Note 33

Cozy Cole All Stars : Lammar Wright, tp; Ray Coniff, tb; Ben Webster, ts; Johnny Guarnieri, p; Teddy Walters, g; Billy Taylor, b; Cozy Cole, .
New York, March 13, 1944.

S 5410 JOSHUA Savoy MG 14010
S 5411 TALK TO ME Savoy MG 14010

Omit Wright and Coniff, same date.

S 5413 BODY AND SOUL Savoy MG 14010

Big Sid Catlett Quartet : Ben Webster, ts; Marlowe Morris, p; John Simmons, b; Sid Catlett, d.
New York, March, 18, 1944.

A-4738-1 SLEEP Commodore 546
A-4739-2 LINGER AWHILE Commodore 546
A-4740-1 MEMORIES OF YOU Commodore 1515
A-4741-1 JUST A RIFF Commodore 1515

Walter "Foots" Thomas and his Jump Cats : Emmett Berry, tp; Budd Johnson, cl; Walter Thomas, as, ts; Ben Webster, ts; Clyde Hart, p; Oscar Pettiford, b; Cozy Cole, .
New York, April 1, 1944.

BLUES ON THE DELTA Joe Davis 8125

Ben Webster Quartet : Ben Webster, ts; Johnny Guarnieri, p; Oscar Pettiford, b; David Booth, d.
New York, April 17, 1944.

S 5436-2 HONEYSUCKLE ROSE Savoy 506
S 5437-1 I SURRENDER DEAR Savoy 505
S 5438-2 BLUE SKIES Savoy 505
S 5439 KAT'S FUR Savoy 506

Benny Morton All Stars : Benny Morton, tb; Barney Bigard, cl; Ben Webster, ts; Sam Benskin, p; Israel Crosby, b; Eddie Dougherty, d.
New York, January 31, 1945.

CR 02435

CONFIDENTIAL

Untitled Document                                                    Page 6 of 7

BN 219 MY OLD FLAME Blue Note 47
BN 22 THE SHEIK OF ARABY Blue Note 46

**DISC FOUR - STARDUST**

Benny Morton All Stars : Same personnel and date as "The Sheik of Araby".

BN 220 CONVERSING IN BLUE Blue Note 46
BN 222 LIMEHOUSE BLUES Blue Note 47

Woody Herman and the V-Disc All Stars : Bill Harris, tb; Ben Webster, ts; Ralph Burns, p; Billy Bauer, g; Chubby Jackson, b;
Johnny Blowers, d.

JOHN HARDY'S WIFE V-Disc 752

Ben Webster and his Orchestra : Idrees Sulieman, tp; Tony Scott, cl; Ben Webster, ts; Argonne Thornton, p; Bill De Arango, g;
John Simmons, b; Sid Catlett, d.
New York, May 3, 1946.

H 1935 THE JEEP IS JUMPIN' Haven 802
H 1936 I GOT IT BAD (AND THAT AIN'T GOOD) Haven 802
H 1937 DARK CORNERS Haven 803
H 1938 BLUES, MISTER BRIM Haven 803

Ben Webster Quintet : Ben Webster, ts; Al Haig, p; Bill De Arango, g; John Simons, b; Sid Catlett, d.
New York, May 15, 1946.

H 1939 FROG AND MULE Haven 805
H 1940 SPANG Haven 805
H 1941 DOCTOR KEETS Haven 804
H 1942 PARK AND TILFORD BLUES Haven 804

Tony Scott Sextet : Dizzy Gillespie, tp; Trummy Young, tb; Tony Scott, cl, as; Ben Webster, ts; Jimmy Jones, p; Gene Ramey,
b; Eddie Nicholson, d.
New York, 1946.

S1 121 YOU'RE ONLY HAPPY WHEN I'M BLUE Gotham 117

Walter Brown with Jay McShann's Kay-Cee Stompers : Ben Webster, ts; Jay McShann, p; Herman Bell, g; Lloyd Anderson, b;
Jesse Price, d; Walter Brown, voc.
Kansas City, November 1, 1949.

5139 NEW STYLE BABY Capitol 806
5140Z LET'S LOVE AWHILE Capitol 1112
5141 NASTY ATTITUDE Capitol 806
5142Y SLOW DOWN BABY Capitol 1112

Jay McShann and his Orchestra : Orville Minor, tp; Clifford Jenkins, ts; Ben Webster, Fats Dennis, ts; Jay McShann, p; Gene
Griddins, g; Lloyd Anderson, b; Cooky Jackson, d.
Kansas City, October 27, 1951.

4619-2 THE DUKE AND THE BRUTE Mercury 8283
4620-2 REACH Emarcy 824836-1

Johnny Otis and his Orchestra : Don Johnson, Gerald Wilson, tp; John Pettigrew, George Washington, tb; Floyd Turnham, as;
Ben Webster, Lorenzo Holden, ts; Curtis Lowe, bs; Devonia Williams, p; Johnny Otis, vib; Pete Lewis, g; Mario Delargarde, b;
Leard Bell, d; Emmanuel "Gaucho" Vaharanes, cga.
Los Angeles, December 26, 1951.

CR 02436

CONFIDENTIAL

Untitled Document

4616-1 ONE O'CLOCK JUMP Emarcy 824836-1
4719-2 STARDUST Emarcy 824836-1

Ben Webster Sextet : Maynard Ferguson, tp; Benny Carter, as; Ben Webster, ts; Gerald Wiggins, p; John Kirby, b; George Jenkins, d.
Los Angeles, December 27, 1951.

4720 RANDLE'S ISLAND Mercury 8265
4721 OLD FOLKS Mercury 8298
4722 KING'S RIFF Mercury 8298
4723 YOU'RE MY THRILL Mercury 8265

CR 02437

CONFIDENTIAL

Sunset and Vine



**CAPITOL RECORDS, INC.**

Hollywood 28, Calif.

Contract No. 757
Vault Copy
File Copy
Artist's Copy

### ARTISTS CONTRACT FOR SOUND RECORDS
(Flat Rate)

Contract No.  **757**

April 15, 1949

WALTER BROWN
c/o John Tunine
Consolidated Orchestras of America
12th and Walnut Building
Kansas City, Missouri

CAPITOL RECORDS, INC, a corporation, herein referred to as "Capitol" and   **WALTER BROWN**
herein referred to as "Artist," agree as follows:

1. Capitol hereby engages the Artist's exclusive personal services in connection with the production of sound records for a term of
**Six (6) Months** commencing on   **April 15, 1949**

The minimum number of selections to be recorded during each year of the term hereof is set forth in the Schedule in Paragraph 2. The phrase "year of the term" as used in this agreement means the period commencing on the commencement date of the term of this agreement and each period of anniversary thereof. In addition it is understood that each such year of the term is subject to extension and termination as provided in this agreement and, accordingly, each reference herein to the year of the term of this agreement shall be deemed to be a reference to the respective terms as it may be computed, extended or terminated as provided herein. Artist accepts such engagement and agrees to perform at such times and places as Capitol may select. In recording the minimum number of selections provided in Paragraph 2, or more if requested by Capitol. Artist agrees to record and re-record each selection until a commercially satisfactory master is produced.

2. In consideration of the due performance of the terms and provisions hereof by Artist to be performed, and for all rights granted by Artist to Capitol hereunder, Capitol agrees to pay Artist, upon acceptance by Capitol of each commercially satisfactory master recorded hereunder by Artist, as follows:

| Year of the Term | Minimum Number of Selections to Be Recorded During the Year | Amount to Be Paid for Each Master Accepted |
|---|---|---|
| FIRST | Four (4) | $75.00 |
| SECOND | | 1% |
| THIRD | | 1% |

3. Capitol agrees to supply all facilities in connection with the making of the recordings and to pay any compensation payable to the orchestra for each regular recording session in accordance with the scale established by the local of the American Federation of Musicians having jurisdiction. If Artist should fail to appear or be late in appearing at the time and place designated by Capitol for recording hereunder, Artist agrees to pay to Capitol all costs, expenses and charges incurred or paid by Capitol by reason thereof. All overtime charges, if any, for the orchestra shall be paid for by Artist if such overtime is caused by the fault of Artist. Artist agrees to supply instrumentations, orchestrations and arrangements for the selections to be recorded hereunder which Capitol may incorporate in the records without any additional payment to Artist. Capitol may, at its own expense, have additional or other instrumentations, orchestrations and arrangements made.

4. Artist agrees to record exclusively for Capitol. Artist agrees that during the term hereof, including any periods of suspension, Artist will not perform for Artist or for any person, firm or corporation other than Capitol, in connection with or for the purpose of making sound records. Artist agrees not to permit any person, firm or corporation to use the name, likeness or any other identification of Artist, in connection with any sound records made in violation hereof, and Capitol may, in its own name or in the name of the Artist, take steps to prevent any such use.

(a) Artist may make electrical transcriptions during the term hereof, provided that Artist may not use or permit any person, firm or corporation to use the name, likeness or any other identification of Artist in connection with the production, distribution or use ~~[illegible]~~

(b) ~~[illegible]~~ within five years from the termination of his employment by Capitol ~~[illegible]~~

(c) It is agreed that it would be impracticable or extremely difficult to fix the actual damages sustained by Capitol in the event of any breach by Artist of the covenants contained in this paragraph 4, and therefore, by way of liquidated damages, and not by way of penalty, after the breach of any of the covenants contained in this paragraph 4 by Artist, Capitol shall be entitled to receive from Artist all moneys or other considerations received or to be received by Artist from, on or in connection with the act or conduct of Artist, which amounted to a breach of the covenants contained in this paragraph 4 and Artist agrees to hold all such moneys or other considerations received or to be received by him in trust for Capitol and to pay such moneys to Capitol on demand. This provision, however, shall not be construed as a waiver of any other rights or remedies Capitol may have in the premises, for damages, injunctive relief or otherwise, all rights or remedies of Capitol being cumulative.

(d) Artist represents and warrants that there are no agreements which prevent Artist from fulfilling all of Artist's obligations hereunder or which will impair the rights granted Capitol hereunder. Artist agrees that any contracts hereafter entered into by Artist shall expressly refer to this agreement and shall provide that Artist shall be permitted such time as may be necessary in order to fulfill this agreement, it being understood that Capitol shall have first call upon the time of Artist in complying with this agreement. ~~[illegible]~~ will cause Capitol irreparable injury and damage. Artist expressly agrees that Capitol shall be entitled to injunctive and other equitable relief to prevent a breach of this agreement or any portions thereof by Artist, which relief shall be in addition to any other rights for damages or otherwise which Capitol may have.

6. Should Artist, for any reason whatever, be unavailable for the making of recordings at the times designated by Capitol, or fail to make recordings at such times, the then current year of the term hereof may, at the option of Capitol, be extended for such period of time as shall elapse until Artist renders the required services for Capitol. Capitol shall have at least 30 days notice before Capitol is required to arrange for the making by Artist of the recordings for which Artist was unavailable or which Artist failed to make hereunder.

7. Selections to be recorded hereunder shall be chosen by agreement of Capitol and Artist. In the absence of agreement, Capitol's decision as to selections to be recorded shall be final.

CR 02438

CONFIDENTIAL

8. If Capitol is prevented from performing its obligations hereunder by reason of any cause beyond its control, including, but not limited to acts of God, war, riot, labor troubles, priorities, lack of materials, or by any law, ruling or regulation of any federal, state or other governmental board, agency or administrative office, or by any court, or if any union having jurisdiction over Artist, musicians or other personnel whose services are necessary in the recording or making of sound records, makes any rule or regulation or take any action which makes it impossible or commercially impracticable for Capitol to record, make, distribute, sell or otherwise dispose of sound records in accordance with its usual business practice, then Capitol may, by notice in writing, to Artist, suspend operation of this agreement during the continuance of such condition. All periods of suspension may be added to the then current year of the term hereof. If any period of suspension under this paragraph 8 (other than one described in the provios clause of this sentence) continues for a consecutive period of 6 months, or more, Artist may notify Capitol in writing that Artist will terminate this contract unless Capitol, within 30 days after such notice from Artist, elects to end such period of suspension; provided, however, that if the suspension is caused by the act, rule or regulation of any union having jurisdiction over Artist, musicians, technicians or other personnel whose services are necessary in the recording or making of sound records, then the period of suspension shall continue for the entire duration of such contingency.

9. The expiration or other termination of this agreement shall not in any way extinguish, limit or curtail any of Capitol's rights, title, interest or privileges in or in connection with any of the results or proceeds of the rendition of Artist's services hereunder, including any material supplied by Artist hereunder and particularly shall not affect Capitol's rights as specified in paragraph 10 hereof.

10. In consideration of the execution of this agreement by Capitol and of the agreements undertaken by Capitol herein, Artist has given and granted and does hereby give and grant to Capitol the following:

(a) The sole, exclusive and perpetual right to manufacture, advertise, sell, lease, license or otherwise use or dispose of in any and all fields of use throughout the world, or to refrain therefrom, throughout the world or any part thereof, records embodying the performances to be recorded hereunder, upon such terms and conditions as Capitol may approve. Nothing herein contained shall obligate Capitol to make or sell any records with selections recorded by Artist, and Capitol shall fulfill its entire obligation to Artist with reference to any selections recorded by Artist of which no records are made or sold by Capitol by paying Artist such moneys as Capitol may have obligated itself to pay Artist hereunder for commercially satisfactory masters accepted by Capitol.

(b) The perpetual right to use and publish and to permit others to use and publish the Artist's name, likeness and photograph and to write and publish and to permit others to write and publish articles concerning Artist, to advertising and trade purposes in connection with the sale and exploitation of products of Capitol, or products bearing the trade-mark or trade name of Capitol, and of sound records made hereunder, and to use as descriptive of the Artist the phrase "Capitol Exclusive Artist" or any similar appropriate phrase. It is expressly agreed that Capitol may release records of selections made hereunder under the name of Capitol or under any other name which from time to time may be selected by Capitol.

(c) The sole, exclusive and perpetual ownership in, and all the right, title and interest to the sound records made hereunder, including, but not limited to, the right to use and control all masters, matrices and records obtained from recordings made hereunder and the performance embodied therein. The words "sound records" are defined as including phonograph records and any other method by which sound may be recorded for later transmission to listeners, and the words shall not be limited to any particular form of recording or transmission but shall encompass any future method discovered or used, whether now known or unknown provided, however, that the rendition of services by Artist in the recording of sound in the production of motion pictures shall not be deemed to be a violation of this agreement.

(d) The sole, exclusive and perpetual right, if Capitol desires, to perform the records publicly or to permit public performance thereof by means of radio broadcasting, or otherwise.

(e) The right to sell records in albums, which albums may contain records of other artists.

11. All notices or statements which Capitol may be required or desires to serve upon Artist may be served upon Artist personally or by mailing the same to Artist at the address set forth beneath Artist's signature, or at such address as Artist may designate from time to time in writing. If Capitol mails any notice, the date of mailing, postage prepaid, shall be the date of service.

12. Capitol may, at its election, assign this contract or any part thereof to any person, firm or corporation, and this contract shall inure to the benefit of and be binding upon the successors and assigns of Capitol.

13. Any dispute or controversy between Capitol and Artist with reference to this agreement, its interpretation or effect or with reference to any breach or alleged breach thereof shall be submitted to arbitration in accordance with the laws of the State of California. Nothing herein contained shall deprive Capitol of the right to resort to the courts for relief by way of attachment, receivership, injunctive or other equitable relief, prior to or to enforce an award.

14. This agreement is entire and all negotiations and understandings have been merged herein. No statements or representations have been made to Artist except those expressly stated in this instrument. This agreement may only be extended by an instrument in writing executed by both Capitol and Artist.

15. Artist hereby gives and grants Capitol the following rights and options.

(a) To renew this agreement for a period of [handwritten: six (6) months] upon the expiration of the original period, upon all the terms and conditions contained except as set forth in line (1) of the schedule below.

(b) To renew this agreement for a period of 1 year upon the expiration of the first optional period, upon all the terms and conditions herein contained except as set forth in line (2) of the schedule below.

(c) To renew this agreement for a period of 1 year upon the expiration of the second optional period, upon all the terms and conditions herein contained except as set forth in line (3) of the schedule below.

(d) To renew this agreement for a period of 1 year upon the expiration of the third optional period, upon all the terms and conditions herein contained except as set forth in line (4) of the schedule below.

(e) To renew this agreement for a period of 1 year upon the expiration of the fourth optional period, upon all the terms and conditions herein contained except as set forth in line (5) of the schedule below.

(f) To renew this agreement for a period of 1 year upon the expiration of the fifth optional period, upon all the terms and conditions herein contained except as set forth in line (6) of the schedule below.

| | Year of the Term | Minimum Number of Selections to Be Recorded During the Year | Amount to Be Paid for Each Master Accepted |
|---|---|---|---|
| (1) | 2nd – 6 months | Eight (8) | $ 125.00 |
| (2) | | | $ |
| (3) | | | $ |
| (4) | | | $ |
| (5) | | | $ |
| (6) | | | $ |

Each option may be exercised by Capitol by giving Artist notice in writing at least 10 days prior to the expiration of the next preceding period of this agreement.

CAPITOL RECORDS, INC.

Approved by Repertoire:

_S. N. Jr._

By _[signature]_
Daniel A. Enbright, Secretary

ARTIST: _[signature] Walter Brown_

_Walter Brown, c/o John Tumino_
Address: Consolidated Orchestras of America
12th and Walnut Building
Kansas City, Missouri

Form 196

CR 02439

CONFIDENTIAL

| Option Period Term | Minimum Number of Selections to be Recorded during the Year | Advances on Account of Royalties on Each Master Accepted | Royalty on Each Double-Faced Record Sold which Embodies Performance by Artist on Both Sides |
|---|---|---|---|
| (2) 3rd (1 year) | Eight (8) | $125.00 | 2% or 1½¢, whichever is less |
| (3) 4th (1 year) | Eight (8) | $125.00 | 2½% or 1-7/8¢, whichever is less |
| (4) 5th (1 year) | Eight (8) | $150.00 | 2½% or 1-7/8¢, whichever is less |
| (5) 6th (1 year) | Eight (8) | $150.00 | 3% or 2¼¢, whichever is less |

*INITIALS* W.B.

Each option may be exercised by Capitol by giving Artist notice in writing at least ten (10) days prior to the expiration of the next preceding period of this agreement.

16. The following provisions shall apply as to any performances by Artist hereunder during a royalty period, any of the other provisions hereof to the contrary notwithstanding:

a. Advances on account of royalties will be paid by Capitol to Artist within fourteen (14) days of the acceptance by Capitol of each master.

b. Royalties:

(1). Capitol will compute such royalties within forty-five (45) days after the first day of January and July of each year for the preceding six (6) month period and will pay such royalties, less any then unrecouped advances within said forty-five (45) days.

(2). Royalties will be computed upon records sold by Capitol for which Capitol has been paid, less any returns or other rebates or credits which Capitol has given or made or which Capitol may thereafter give or make.

(3). Royalties expressed in percent will be based upon the retail list price of records in the country of manufacture, the United States, England or the country of sale, at Capitol's election. All such royalties will be computed in the national currency of the country to which the retail list price so elected applies and as to sales made outside of the United States of America will be paid at the same rate of exchange as Capitol was paid.

(4). Royalties on records included in albums will be determined by the retail list price for replacement records and not upon the retail list price of the albums.

(5). One-half of the scheduled amount of royalty will be paid on each single- or double-faced record sold which embodies performance by Artist on one side only.

(6). Royalties for records sold outside the United States of America will not be due and payable until payment for such records is received by Capitol in the United States of America.

(7). The royalty rate applicable to a given selection shall be the rate specified for the period in which the said selection was recorded.

c. For the services of the musicians, rendered in connection with the making of the recordings hereunder, Capitol will make a non-returnable payment to the musicians within 14 days after the services are rendered, at the rate of union scale, which non-returnable payment is included within the advances to be made to Artist hereunder and such payments shall be charged against and deducted from the total earned royalties payable to Artist hereunder. Should the applicable advance against royalties be insufficient to pay the above, Capitol will increase the amount of the advance to the extent necessary to do so. Artist agrees that all costs of other vocalists and of arranging and copying shall be paid by Artist; provided, however, that Capitol may, at its election, pay such costs directly to the person or persons providing the services and shall deduct the same from any and all royalties accruing to Artist. All advances shall be deemed non-returnable advances and shall be deducted from the total royalties payable to Artist under this or any other agreement.

*INITIALS* W.B.

CONFIDENTIAL